The Illinois Central Railroad Company

*v.*

James F. Swift.

*Opinion filed December 22, 1904.*

1. Appeals and errors—*requesting peremptory instruction presents a question of law.* Requesting a peremptory instruction to direct a verdict presents a pure question of law, and by the taking of an exception to its refusal the question of law is preserved for the consideration of a court of review.

2. Same—*what not a waiver of error in refusing peremptory instruction.* Arguing the case and submitting the issues to the jury on instructions after the refusal of a peremptory instruction to direct a verdict, to which an exception was taken, is not a waiver of the question of law preserved by the exception. (*Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614, and *Chicago Terminal Railroad Co.* v. *Schmelling,* 197 id. 619, criticised.)

3. Master and servant—*when servant cannot recover.* An experienced servant left to his own discretion as to the manner of performing task under a general order, who selects a dangerous method of doing the work instead of a safe method which is equally open to him, cannot recover from the master for consequent injury.

4. Same—*master may assume that servant is possessed of ordinary mental faculties.* The master has the right to assume that an experienced servant of mature years is possessed of ordinary mental faculties, the usual powers of observation and such knowledge as is acquired by common experience.

5. Same—*limit of doctrine of res ipsa loquitur.* The doctrine of *res ipsa loquitur* only applies where the thing from which the injury results is shown to be under the control of the defendant, and where the accident is such as in the ordinary course of things would not have happened had those in control used proper care.

6. Same—*when doctrine of res ipsa loquitur does not apply.* If the tipping over of a pile-driver on which a servant was working was not the result of the condition in which the master left it, but occurred when the servant attempted to climb to the top after removing half of the supporting ropes without attaching a temporary support, the doctrine of *res ipsa loquitur* does not apply.

7. Pleading—*when it is not error to sustain demurrer to plea.* If a plea of the Statute of Limitations interposed to all of the additional counts of the declaration does not present a defense to all of them it is not error to sustain a demurrer to the plea.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

This was an action on the case, brought in the circuit court of Cook county, on September 25, 1897, by James F. Swift, the appellee, against the Illinois Central Railroad Company, appellant, to recover damages for a personal injury received by appellee on November 10, 1896, on account of the falling of a pile-driver through the alleged negligence of appellant. On January 7, 1898, a declaration consisting of one count was filed, in which it was alleged that on November 10, 1896, the plaintiff was in the employ of the defendant engaged in repairing a bridge across the Illinois river at LaSalle, Illinois; that near the bridge was a pile-driver, upon and fastened to a boat or float; that on the day aforesaid plaintiff's foreman ordered plaintiff to go down to the pile-driver, climb to the top thereof and bring to said foreman a piece of tackle and pulley which was fastened to the top of the pile-driver; that the defendant carelessly and negligently caused the pile-driver and float to be so arranged and constructed that when the plaintiff, with due care, ascended to the top of the pile-driver to remove the tackle, the fastenings which bound the pile-driver to the float gave way and the pile-driver fell and precipitated the plaintiff into the river, whereby he was injured. Appellant filed the general issue to this declaration. Afterwards, on June 27, 1901, the plaintiff filed seven additional counts to his declaration. The first of these counts charged the negligence of the defendant to have consisted in not having the pile-driver secured or fastened to the boat or float; the second and third, negligence in permitting the pile-driver to be insufficiently and improperly secured and fastened to the float; the fourth, negligence in failing to prevent plaintiff from going upon or ascending the pile-driver; the fifth and sixth, the same negligence as the original declaration; and the seventh, negli-

gence in permitting the pile-driver to become and remain unsafe and insecure. On June 28, 1901, the defendant filed the general issue to the additional counts, and on September 27, 1902, filed a plea of the Statute of Limitations to all the additional counts. A demurrer was interposed to the last mentioned plea and was sustained. A trial was had before a jury, and a verdict was returned for $20,000 damages, upon which judgment was rendered, and an appeal was taken to the Appellate Court for the First District. The Appellate Court affirmed the judgment of the circuit court, and the railroad company appealed to this court.

The facts, as shown by the evidence, are substantially as follows: On November 10, 1896, while working for the defendant on a bridge crossing the Illinois river near LaSalle, plaintiff, who was employed as a bridge carpenter, was directed by the superintendent in control of the workmen to go with a fellow-workman, named Morphew, to a scow or flatboat, near the north bank of the river and about one hundred and fifty feet east of the bridge. The superintendent's order, according to Swift's testimony, was in these words: "I want you to go down to the river and get a pair of sheave-blocks that hang on the top of the pile-driver that sits on the barge." The scow, or barge, was standing in the water and extended lengthwise in an easterly and westerly direction. The pile-driver stood on the east end of the scow. Formerly an engine, used to operate the pile-driver, had occupied the west end, but it had been removed some time prior to the date of the injury. The west end of the scow rested on the bank of the river, while the east end was in deeper water, and the scow and pile-driver were inclined to the east.

The pile-driver consisted of two large upright timbers, thirty-six feet in length, resting in the east ends of two timbers known as bed-sills, and at right angles with said bed-sills. Two other timbers extended from the top of the upright timbers diagonally down to the other ends of the bed-sills, the bed-sills being twelve feet long, constituting a

support for the upright timbers. A ladder leading from the scow to the top of the pile-driver was constructed on the diagonal timbers. The eastern extremity of the bed-sills extended to the eastern edge of the scow, and the upright timbers extended directly up from this eastern edge. The pile-driver weighed about five thousand pounds, was thirty-six feet high and not more than twelve feet across at the base from east to west. The timbers of the base were fastened to the scow by drift-bolts and strips of iron to keep the base from shifting its position. Two sets of ropes and sheave-blocks, referred to by the witnesses as "falls," had been installed to prevent the pile-driver from tipping and falling over. As the pile-driver stood on the scow prior to the time of the injury, the "falls" extended from either side of the pile-driver at the top down to ropes attached to posts or timber-heads on the scow west of the pile-driver. Each set consisted of two sheave-blocks and the necessary rope to form four strands when in position on the pile-driver, and a hauling line by means of which the strands could be loosened or tightened and the distance between the sheave-blocks increased or diminished. One sheave-block of each set of "falls" was fastened or hooked to the top of the pile-driver and the other to a rope, referred to as a pennant line, which was fastened to the timber-head or post on the scow west of the pile-driver. The hauling line was fastened to the bed-sill of the pile-driver. In order to unfasten the sheave-block from the top of the pile-driver or from the pennant line, it was necessary to first release the hauling line from the bed-sill, whereby the ropes of the "falls" would become slack.

Upon reaching the scow the plaintiff immediately started up the ladder of the pile-driver, without having had any conversation with Morphew concerning the work to be done by either in taking down the sheave-blocks. While plaintiff was ascending the ladder Morphew unfastened the hauling line of the south set of "falls." Plaintiff, upon reaching the top of the pile-driver, unfastened the sheave-block of that set of

"falls," and Morphew, standing on the scow, detached the sheave-block of the same set from the pennant line which connected it with the timber-head.  Plaintiff brought the sheave-block removed by him down the ladder to the scow and he and Morphew, by pulling on the ropes, brought the two sheave-blocks, removed by them, together, and Morphew carried them from the scow to the land, and proceeded to prepare a guy line to replace the "falls" which had just been removed, while plaintiff again ascended the ladder to remove the other sheave-block which was attached to the pile-driver. A strong wind was blowing and the scow was rocking at this time.  When Swift reached the top of the pile-driver, and while attempting to detach the sheave-block from .its fastening, the pile-driver fell over to the east into the river, carrying plaintiff with it, and he received the injuries complained of.

After the injury it was found that the hauling line of the north or remaining set of "falls" had been unfastened from the bed-sill, or that the line had broken, and this had allowed the rope to run back through the sheave-block and had prevented the "falls" from holding the pile-driver.  Plaintiff and Morphew were the only persons on the scow, and both denied having released the hauling line from the bed-sill. The testimony of appellee indicates that the line broke, thus permitting the fall of the pile-driver.  After removing the first set of "falls," no lines, ropes or other supports were fastened to the pile-driver to take its place.  The bolts fastening the pile-driver to the scow pulled out of the timbers of the scow when the pile-driver fell into the river.

Plaintiff had never worked on the pile-driver in question, had never seen it in operation and had not been on the scow prior to the time he was injured, nor had he received any information concerning the pile-driver or its fastenings other than what he observed on this occasion.  He had seen pile-drivers before and had worked around them.  Prior to this time he had worked for the Wabash railroad for a period of eight months, during all of which time the train which he

accompanied had a pile-driver attached to one of its cars. He had also worked about pile-drivers for the Rock Island railroad, and a few weeks previous to the time he was injured had worked for the defendant at another place where a pile-driver was being used.

At the close of plaintiff's evidence in chief and again at the close of all the evidence in the case, the defendant moved the court to instruct the jury to find the issues for defendant, which motion in each instance was accompanied by a peremptory instruction in writing. The court refused each instruction, and its action in so refusing the peremptory instruction at the close of all the evidence is assigned as error. The action of the trial court in sustaining the demurrer to defendant's plea of the Statute of Limitations is also assigned as error.

W. A. Howett, (J. G. Drennan, of counsel,) for appellant.

Francis W. Walker, and Al. G. Welch, for appellee.

Mr. Justice Scott delivered the opinion of the court:

Appellant duly excepted to the action of the court in overruling its motion made at the close of all the evidence for a peremptory instruction directing the jury to find for the defendant, and now seeks to present to this court the question whether there is in this record any evidence which, with the inferences reasonably to be drawn therefrom, is sufficient to warrant a verdict for the plaintiff. Appellee urges that this question is not now open for consideration upon this record. His position in that regard and the views of the Appellate Court for the First District upon that subject are concisely stated in the following language from the opinion of that court in this cause:

"At the request of the appellant's counsel the court gave nineteen instructions which, in differing language, submitted

as questions of fact to be determined by the jury every contested issue in the case, including the assumption of risk, contributory negligence of appellee, and the negligence of appellant. This being the state of the record, appellant can not now be heard to say that there was error in submitting the cause to the jury on either of these questions. The instructions referred to conceded, in effect, that there was evidence tending to establish the plaintiff's case on these issues, and appellant is precluded from asserting the contrary in this court."

This view of the law is incorrect. The motion for a peremptory instruction presents a pure question of law, and, in the event of an adverse ruling, an exception preserves that question of law for the consideration of an appellate tribunal. After that adverse decision the defendant may argue to the jury that its guilt is not shown by a preponderance of the evidence, which is purely a question of fact, and the submission of that question of fact to the jury by instructions offered by the defendant does not waive the question of law already passed upon by the court where the defendant's rights have been properly preserved. This has been the universal practice in this State for many years and will not now be disturbed.

The language used by this court in each of the cases of *Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614, and *Chicago Terminal Railroad Co.* v. *Schmelling,* 197 id. 619, in so far as inconsistent with the views herein expressed, was not necessary to the disposition of the question then before the court.

In support of this motion it is urged that the evidence fails to show that plaintiff was in the exercise of due care. A careful examination of the proof leads us to the conclusion that it lacks in this respect. Considering only the evidence favorable to appellee, it appears that the pile-driver, thirty-six feet in height, stood upon the east end of the scow, which was depressed by the weight, and that depression caused the structure to lean to the east. It did not fall eastward prior

to the time appellee first climbed thereon, for the reason that it was guyed by ropes passing through the sheave-blocks near the top of the pile-driver and attached to posts or timber-heads on the scow west of the pile-driver. It appears from the testimony of appellee that his knowledge of pile-drivers was such that had this pile-driver been standing on the ground he would have known that guy lines were necessary to keep it in an upright position, but that he supposed as it stood upon the scow they might not be necessary. No reasonable ground for such supposition is shown. The pile-driver was in fact not otherwise secured except by bolts and plates designed exclusively to keep it from working back and forth or from side to side while in use on the scow.

Under these circumstances, without attaching other lines to keep the pile-driver from falling, the appellee detached one of the sheave-blocks and with it the lines on that side of the pile-driver, and says: "I discovered, when I went up to unhook the first block, that the waves and water caused the barge to rock around some; the driver being pretty high up made it wave around," and then having taken away one-half the lines which kept it in an erect position, he remounted the leaning pile-driver and attempted to detach the sheave-block carrying the remaining lines, and while so engaged observed what he says was the end of a broken rope passing through the sheave-block, found the pile-driver falling to the east and his injury followed consequent upon the fall.

Any person of intelligence, accustomed to working about pile-drivers, would know that this one, already leaning to the east and rocked by the winds and waves, would be liable to topple over unless supported by lines or braces. The falls consisted of four lines on each side passing from sheave-blocks at the top of the structure to posts on the scow west of the west end of the bed-sills. These lines were plainly visible. It would seem they could not be overlooked, and the most casual observation would show that they were necessary to the support of the pile-driver. Appellant had the

right to assume that appellee, a man of mature years, was possessed of ordinary mental faculties, the usual powers of observation and such knowledge as is acquired by common experience. (*Ruchinsky* v. *French,* 168 Mass. 68.) Such a man, exercising his senses, in broad daylight, in the situation in which appellee was, with his familiarity with pile-drivers, would perceive that this particular pile-driver was in danger of falling if the lines were removed. Failure to discover so obvious a danger could result only from negligence.

In support of the action of the trial court in refusing to direct a verdict for the defendant, it is urged by appellee, in the language of this court in *Illinois Steel Co.* v. *Schymanowski,* 162 Ill. 447, "the master is liable, where the servant is injured by a temporary peril to which he is exposed by the positive negligent act of the employer without any negligence on the part of the servant," and it is stated that recovery is sought on the principle that the master must not expose the servant to danger.

The place in which, and the appliances with which, appellee was directed to perform the service in question were not dangerous. The danger was created by the manner in which the servant performed the task. Here the superintendent was not present when the work was done; the command was given at a considerable distance, at least one hundred and fifty feet, from the place where the duty was to be performed, and the servant was at liberty, when he reached the scow, to go about the performance of the task in the manner that seemed to him best. Ropes were lying upon the scow which could have been used to secure the pile-driver before either sheave-block was removed. In fact, it appears that appellee's fellow-workman, to whose attention the danger was not called as sharply as it should have been to that of appellee for the reason that the duty of ascending the pile-driver devolved upon the latter, contemplated attaching a guy line to the pile-driver before an attempt was made to remove the last sheave-block.

Where the servant is specifically directed by his superior to do the work in a dangerous manner, and injury results, he may recover, unless, indeed, the danger was so imminent that a reasonably prudent man would not have incurred it. (*Illinois Steel Co.* v. *Schymanowski, supra; Chicago Anderson Pressed Brick Co.* v. *Sobkowiak,* 148 Ill. 573; *West Chicago Street Railroad Co.* v. *Dwyer,* 162 id. 482; *Illinois Steel Co.* v. *Wierzbicky,* 206 id. 201.) Where, however, the employee is not directed to do the work in a specific manner, but is given a general order to perform the task and is himself left to use his own discretion as to the manner in which the work shall be done, and there exists a safe way and a dangerous way, which are equally open to him, if he selects the unsafe method through heedlessness or because it involves less exertion on his part, and injury to his person results, he cannot recover. *Pennsylvania Co.* v. *Lynch,* 90 Ill. 333; *Illinois Central Railroad Co.* v. *Sporleder,* 199 id. 184.

It is further suggested, however, that the breaking of the rope in the left-hand set of falls was the proximate cause of the injury, and that the doctrine of *res ipsa loquitur* applies. The meaning of this term is that the thing itself speaks; that is, that the accident itself raises a presumption of negligence on the part of the defendant, which he must rebut by showing that he took reasonable care to prevent the happening of the accident. The doctrine only applies, however, where the machine, appliance or other thing from which the injury results is shown to be under the management of the defendant and the accident is such as in the ordinary course of things does not happen if those in control use proper care. (1 Addison on Torts, sec. 33; *North Chicago Street Railway Co.* v. *Cotton,* 140 Ill. 486; *Chicago City Railway Co.* v. *Barker,* 209 id. 321.) The doctrine does not apply here for the reason that the accident did not result from the condition in which the defendant placed and left the pile-driver. The ropes that held it, as it had been left prior to the time the appellee approached it, were sufficient to maintain it in an

upright position. Had the ropes broken and the pile-driver fallen while appellee was ascending the first time and before either of the sheave-blocks had been removed, there would have been some ground for invoking the doctrine; but here the person injured had removed one-half the lines which the defendant had attached to the pile-driver for the purpose of sustaining it in an upright position, and after doing that he climbed again up the leaning pile-driver, which, deprived of one-half the support which the defendant had provided, with its tendency to fall to the east, in which direction it was leaning, increased by the weight of appellee, fell and the injury resulted. As between plaintiff and defendant the pile-driver · was not under the sole control or management of the defendant. On the contrary, the plaintiff was himself engaged in altering the condition in which it had been placed by the defendant. Under this state of the proof, it is not to be presumed that the rope was old and rotten or otherwise defective and that the defendant had actual or constructive notice of that fact.

We are constrained to hold that the accident was the direct consequence of two acts of the appellee, viz., removing the sheave-block and the lines which it carried, and thereafter climbing upon the structure without first attaching another guy line or otherwise giving support to the pile-driver, and that in doing these acts he did not exercise ordinary care for his personal safety.

The plea of the Statute of Limitations seems to have been interposed as to all the additional counts of the declaration. It did not present a defense to all of them and we are therefore unable to say that the court erred in sustaining the demurrer to that plea.

The judgment of the Appellate Court and the judgment of the circuit court will be reversed and the cause will be remanded to the circuit court.

*Reversed and remanded.*