## The Pullman Company v. Randall Woodfolk.

### Gen. No. 12,036.

1.   FELLOW-SERVANT RULE—*when statute of sister state abolishing, cannot be availed of.* Where such a statute provides for the service of a particular notice upon the employer, a failure to serve such a notice precludes the right of the servant to avail of such a statute, when suing in this State.

2.   FELLOW-SERVANTS—*when conductor and porter of sleeping car are.* The conductor and porter of a sleeping car are fellow-servants insofar as their duties require that they shall during certain night hours keep watch over said car, one serving during one portion of the night and the other during the remainder thereof.

3.   DECLARATION—*when does not state cause of action.* A declaration in an action for personal injuries, brought by the porter of a Pullman palace car against the company owning the same, charging it with negligence through the conductor of said car, does not state a cause of action when no neglect or violation of duty is alleged and no allegation is made that the plaintiff and such conductor were not fellow-servants.

4.   DECLARATION—*when not aided by verdict.* A declaration which does not state a cause of action is not aided by verdict.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the October term, 1904. Reversed. Opinion filed July 3, 1905.

**Statement by the Court.** Appellee, hereafter called plaintiff, was a sleeping car porter in the employ of appellant, there defendant. March 15, 1900, the plaintiff left Chicago for the West in charge, as porter, of the sleeping car Ophir, which car belonged to and was then being used by the defendant. At Pueblo, Colorado, the Pullman conductors were changed, McWilliams then coming on duty as such. He and the plaintiff had not worked together until this time. The train reached Grand Junction, Colorado, at 12:30 in the morning of March 18, 1900. There the plaintiff was wakened by McWilliams and was told to transfer his passengers to the other sleepers, as the car Ophir was to be cut out of the train. While the plaintiff was transferring his passengers the car was cut out by the railroad employees and the train started west, leaving two passengers, McWilliams and the plaintiff in the car. The passengers went back to their beds. The plaintiff also retired. The rules of the defendant permitted plaintiff to go to bed as soon after ten o'clock as his duties would permit, leaving the conductor on watch. At three o'clock it was the duty of the conductor to awaken plaintiff, who would remain on watch from that time until morning. When the train left the station, the car Ophir stood on the main track. At two o'clock A. M. a railroad switch engine in charge of a railroad crew, pushing three passenger cars before it, came from the east and bumped into the car Ophir, and then pushed the four cars west to the yard limits, where it left them. The railway crew in charge of such engine then made up a west-bound freight train. When that was ready they went west and hitched to the four passenger cars, as they supposed, and placed them on a siding. It appears that when the three cars were pushed against the Ophir, that car did not couple, so that when the cars were placed on the siding the car Ophir was not there. From Grand Junction west the track is down grade. The Ophir

not having coupled when the other cars were brought into contact with it, did not stop when it reached the west limits of the yard, and the three other cars were halted, but continued west by the force of gravity for about four miles before it came to a stop. At four o'clock A. M. the freight train westward bound left Grand Junction. Four miles out it struck the car Ophir, and thereby the injuries of which appellee complains were inflicted upon him. When the collision occurred the plaintiff was asleep in the smoking room of the car. The time was in his watch, but McWilliams had not awakened him. Immediately after the shock McWilliams, dressed in his underclothes only, came into the smoking room.

The first count of the declaration alleges, in general words, that the car was out of order and unsafe. It is not stated in what particular it was out of order, nor how the want of repair contributed to the accident. The second count charges that a certain wheel of the car was out of repair. The third count avers that the brake on the car was out of order. The fourth count avers in general language that the car was out of order, contrary to Section 1511a, Chapter 37, Mill's Annotated Statutes of Colorado. The fifth count sets up that the car was under the control and management of the Pullman conductor, and that by negligence of such conductor the plaintiff was injured, contrary to said statute.

Each count, numbered 1, 2, 3 and 4, alleges the ownership and operation of sleeping cars by the defendant; that the car Ophir was attached to a Denver & Rio Grande train in charge of a Pullman conductor; that plaintiff was porter in that car, under the control and direction of the conductor; and that by reason of the negligence charged in each count the said car was cut off from the train and was allowed to remain upon the main track until it was run into by another train.

The fifth count contains similar introductory averments, but does not allege that the car was cut off the train or run into; the allegation being that "by reason of the negligence

\* \* \* the plaintiff \* \* \* was thrown against and upon said car," etc.

At the close of the case for the plaintiff the defendant moved the court in writing to instruct the jury to return a verdict in its favor, but the court refused so to do. The court inspected the declaration and declared that the fifth count of the declaration only could go to the jury. At the close of all the testimony the defendant renewed its motion, to have the jury return a verdict for the defendant, but the court again denied the motion.

The case was submitted to the jury upon the fifth count, as is shown by the first and second instructions given to the jury at the request of the plaintiff. The jury returned a verdict finding the defendant guilty and assessing the plaintiff's damages at $1,900. From the judgment entered upon such verdict the defendant perfected its appeal to this court.

RUNNELS & BURRY, F. B. DANIELS and C. S. WILLISTON, for appellant.

DARROW, MASTERS & WILSON, for appellee.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

It appears in evidence, and it is a matter of common knowledge, that appellant's chief business is the furnishing of sleeping accommodations for reward to passengers who have already paid the railway company for their transportation; that it never moves a car, and has no means of so doing; that its cars are attached to and detached from railway trains by the servants of the railway company on whose lines the cars are being hauled; that the moving power is furnished solely by such railway company; and that the duties of the servants of appellant in charge of the car are confined exclusively to the interior of the car, they having nothing to do with lights, brakes, signals or any other thing relating to transportation, or to the safety of the trains. Pullman Co. v. Smith, 73 Ill., 360.

In the case at bar the decision to cut out the car Ophir at

Grand Junction was made by the railroad company; its employees made the necessary changes, and the train went on its way, leaving this car standing on the main track at that station. Shortly thereafter the railway employees backed three passenger cars against the Ophir and pushed them west, in order that they might have room to make up a west-bound freight train. It was the duty of these employees to see, when the three passenger cars struck the Ophir, that the latter car coupled with the car next to it. The evidence shows that these two cars did not couple, and that when the four cars, after being pushed west to the yard limits, were attempted to be stopped by the engine, three of them only obeyed, the car Ophir continuing to run down grade to the west on the main line. Here was the first negligence leading up to the injury of the plaintiff. After the freight train was made up, it became necessary to clear the main track so that that train could go on its way. To accomplish this, the railway employees coupled on to the east passenger car standing on the main track and set, as they believed, the four cars in on a siding. Reasonable care required them to see that they had all the cars off the main track. This duty they neglected, since but three cars were thus shunted into a place of safety. Nothing was done by any servant of appellant which in any way tended to put this car in the place it occupied when it was struck by the freight train. The servants in charge of the freight train were not guilty of negligence in running into this vagrant car. They believed and they had a right to believe that the switching crew had done its duty; they were on the watch for obstructions in their way, saw this car as soon as it came into view, and thereafter did what they could to avoid a collision, or at least to lessen its impact.

There is no direct evidence that the car Ophir when it reached Grand Junction was out of order generally, or that one of its wheels was in a state of disrepair, or that its brake was out of order. The evidence gives no other reasons for setting out this car at that station than the statement of Murphy, the switchman, that Daly, the night yard master, or

Coffin, the foreman, told him, Murphy, that this car was in bad order and had to be set off the train. It follows that the order of the trial judge that the fifth count only could go to the jury was correct. Even if the court had submitted the case upon the entire declaration the plaintiff would not have been advantaged thereby, for the reason that the evidence would not sustain a verdict upon either of the first four counts of the declaration.

The Colorado statute was intended to enlarge the common law liability of employers in personal injury cases by wiping out the doctrine of fellow-servant. But that statute provides, in section 1511b, that " no action for the recovery of compensation for injury or death under this act shall be maintained unless written notice of the time and place and cause of the injury is given to the employer within sixty days, and the action is commenced within two years from the occurrence of the accident causing the injury or death." It is not claimed by the plaintiff that any such written notice was given. Indeed, by negative pregnant it is admitted that the statute was not complied with in this respect, for in place of the written notice he attempts to substitute a talk he had with certain officials of appellant after his return to Chicago.

Where an additional right is given by statute, upon a certain expressed condition, the performance of that condition is necessary and proof of such performance must be made before the additional right is granted to one claiming it or under it. Therefore the plaintiff is not aided by the Colorado statute, and we must decide this case without reference thereto.

The fifth count alleges that said car was attached to a train running over and along the tracks of the Denver & Rio Grande Railway Company in the State of Colorado, "which car was under the control and management of one of the agents of the defendant Company commonly called the Pullman Car conductor," that the plaintiff was porter on said car, "and whereas it then and there became the duty of the said defendant company through its superintendent, the Pullman car conductor, to exercise care for the safety of the

said plaintiff in this case, nevertheless, by reason of the negligence of the said Pullman car conductor hereinabove mentioned, plaintiff being then and there in the exercise of all due care and caution for his own safety, was injured contrary to the statute of the State of Colorado," (citing it) "and by reason of the negligence  *   *   *   the plaintiff *   *   *   was injured," etc. This count sets up the duty of appellant, through its conductor, to exercise care for the safety of the plaintiff, but no neglect or violation of that duty is alleged. Nor is it averred that the conductor and the plaintiff were not fellow-servants. The count states no cause of action. Therefore it will not sustain a verdict. Nor is a count thus defective cured by verdict nor by the Statute of Amendments and Jeofails. This objection is preserved by appellant's motion in arrest of judgment.

"It is a well-established rule that a declaration, in cases of this character, must state facts from which the law raises a duty from the master to the servant, and if the declaration fails in this regard, then it is insufficient to support a judgment. As stated in Ayers v. City of Chicago, 111 Ill., 406, 'the pleader must state facts from which the law will raise the duty.' And as said in Cooley on Torts (2nd ed.) 791: 'The first requisite in establishing negligence is to show the existence of the duty which it is supposed has not been performed.' And Mr. Thompson, in his work on Negligence (2 Thompson on Negligence, 1244) says: 'Unless the duty results in all cases from the stated facts, the declaration so framed will be bad.'" Mackey v. Northern Milling Co., 210 Ill., 115; S. C. 99 Ill. App. 57, and cases cited.

The negligence, if any, of the conductor was in not calling the plaintiff to go on watch at 3 A. M., an hour before the accident happened, and in not discovering the dangerous position of the car and warning the plaintiff of that danger. The evidence shows that these two men stood watch and watch. It was the duty of the conductor to keep watch from 10 P. M. to 3 A. M. of every night he was in actual service, and at the latter hour to awaken the plaintiff in order that he might go on watch from then until morning.

The one rightfully sleeping had a right to rely upon the watchfulness of the other. It is clear that these two servants of appellant were fellow-servants under the definition of that relationship so often announced by our Supreme Court. It is true that in some matters the conductor was over the plaintiff, but in this regard they were on the same level. Meyer v. Ill. Cent. Ry. Co., 177 Ill., 591; Chicago City Ry. Co. v. Leach, 208 Ill., 198.

It follows that the motion of appellant to have the jury peremptorily instructed to find a verdict for appellant should have been granted.

The after submission of questions of fact to the jury by instructions offered by appellant did not waive the question of law presented in the motion for a peremptory instruction. Ill. Cent. Ry. Co. v. Swift, 213 Ill., 307, 313.

The judgment of the Circuit Court must be and it is reversed.                                                    *Reversed.*