## James Tygett, Appellee, v. Sunnyside Coal Company, Appellant.

1. Master and servant—*when doctrine of assumed risk does not apply.* A servant who is taken from his regular employment and directed to perform hazardous duties, the risk of which he does not know and of which he is not informed, is not, if injured, subject to the application of the doctrine of assumed risk, and this notwithstanding he may have been what is known as a "company man" and may have belonged to a labor organization and through it had agreed "to perform whatever day labor" his foreman might direct.

2. Instructions—*must not ignore contentions of parties.* An instruction in a personal injury case which directs a verdict of "not guilty" upon the finding of particular facts must not ignore any theory supported by the evidence which would preclude such a verdict.

Action in case for personal injuries.    Appeal from the Circuit Court of Williamson county; the Hon. W. W. Duncan, Judge, presiding.    Heard in this court at the August term, 1907.    Affirmed. Opinion filed March 18, 1908.

Denison & Spiller, for appellant.

W. A. Schwartz, Hosea V. Farrell and J. S. Kendall, for appellee.

Mr. Presiding Justice Higbee delivered the opinion of the court.

Appellee was injured through the falling of a portion of the roof of appellant's coal mine, where he was working, and brought suit against appellant for damages.    The declaration contained four counts, the first of which alleged negligence on the part of appellant in taking appellee from his employment as a track layer and requiring him to help the timbermen of the mine do certain work of timbering in appellant's mine, which work was very dangerous and hazardous; that the dangers and hazards of the work were unknown to appellee but known or by the exercise of or-

dinary care could have been known by appellant; that while he was so at work with the timbermen in said entry, under the orders of appellant, using ordinary care for his own safety, certain slate, coal and other hard substances fell from the roof of said entry upon him, causing the injury complained of.

The second count charged that appellee was employed as a track layer in appellant's mine and while so engaged, appellant required him to help certain timbermen to timber the roof of said entry, which work appellee had never performed and the dangers incident thereto he did not know, but appellant did or might by the exercise of reasonable diligence have known; that defendant negligently required him to work in a dangerous place in performing the work of helping the timbermen in said entry.

The third count charges that appellee was employed by appellant as a laborer in its mine; that it was the duty of appellant to provide him a safe place in which to work, which appellant did not do, but negligently required him to work in said entry under a roof that was loose, unsafe and liable to fall at any time.

The fourth count charged a wilful violation of section 18 of the Mining Statute, but the court at the close of plaintiff's evidence gave a peremptory instruction directing the jury to find the defendant not guilty, under that count, so it need not be considered. The general issue was filed and the trial resulted in a verdict and judgment for $999.

The proofs show that appellee was at the time he was injured some thirty years of age; that he had worked in coal mines about five and one-half years, two years and a half of which were spent by him in appellant's mine; that for a year and a half he worked for appellant as a miner digging coal, then took up the work of a track layer. As a track layer it was his duty to clear away the dirt from the bottom of floors of the entries and rooms and lay railroad tracks connecting the working places with the bottom of the

shaft, for the coal cars to run on. The mine had suspended work during April and May, 1906, and when the work was resumed it was found the fifth southwest entry was in bad repair. During the day and night of June 17th, appellant sent workmen into the entry to clean up the timbers, rock and slate which had fallen, and retimber the entry. When appellee reached the mine the next morning, he was told by Mr. Reed, the assistant manager of the mine, to go over in the fifth southwest entry and help the men who were there at work. When he got there he found two timbermen, Jack Haney and Barney Neill, putting up cross bars in the entry. Mr. LeGrand, who says he was head timberman, had just put Haney and Neill to work and gone to the other side of the "fall" of slate and rock to direct other men in the work.

The cross bars were put up by cutting a notch called a "hitch" on one side of the entry to hold one end of the bar, while the other end was placed upon a prop on the other side of the entry. At the time appellee arrived Haney and Neill had raised a bar up and found that the hitch in the coal was too small, so they took the bar down, and Haney gave appellee a pick and told him to cut the notch larger. Appellee took the pick and enlarged the hitch as directed. Just as he completed his work a large body of slate fell from the top upon him, inflicting severe and permanent injuries.

Previous to this time appellee had not worked as a timberman. Haney had inspected the roof before appellee came and found that the slate was loose and liable to fall, but, as he says, he did not think it was likely to fall right then. The position held by Haney with the company was a matter of controversy. Appellee swore that he was the head timberman, while evidence introduced by appellant tended to show that he was simply one of the ordinary timbermen.

Appellant seeks to reverse the judgment in this case solely on account of alleged errors of the

court below in giving and refusing certain instructions. The given instructions complained of are appellee's instructions Nos. 7 and 8. No. 7 told the jury if they found plaintiff was in the employ of defendant as a track layer, and that defendant by its assistant mine manager, ordered him to leave his said employment and help timbermen do certain work of timbering in the fifth southwest entry, and that said timbering was dangerous and hazardous, and that the defendant knew or would have known by the use of ordinary care of such dangers and hazards to plaintiff, "then you are instructed that plaintiff was not required by law to disobey said Reed; or by obeying to assume the hazards of such obedience, or the dangers and hazards of such timbering work, if any are shown by the evidence, although he may have himself known it was dangerous, unless such dangers and hazards were so imminent that a man of ordinary prudence would not have incurred them."

The eighth instruction stated in different language substantially the same rule of law. Appellant objects to these instructions for the reason that the evidence shows as claimed by appellant that while appellee was working at the time as a track layer, yet he was what was known as a "company man" and as such it was his duty also to do timbering work or whatever day labor the foreman might direct.

It appeared from the evidence that appellee was a member of the local organization of the United Mine Workers of America and that appellant belonged to the State Coal Operators' Association; also that there was in force an agreement between the United Mine Workers of America and the Coal Operators' Association of Illinois, defining the relations of the two bodies and fixing the rules of employment to be observed by them.

Section 24 of the seventh subdivision of the Illinois agreement was offered in evidence by appellant, and admitted by the court. It provided among

other things, "all company men shall perform whatever day labor the foreman may direct." Appellant's mine manager testified that company men are the men who work for the company by the hour or by the day, such as track layers, timbermen, drivers and cagers.

The theory of appellant is that appellee was bound by the agreement above referred to and that therefore he became a timberman when ordered to do that work by appellant's foreman; that the rule requiring the master to use reasonable care to furnish a reasonably safe place for the servant to work, does not apply to the work of timbermen which is of necessity hazardous; that the assistant mine manager did not change appellee from his regular employment but only directed him to do that which he had agreed was to be a part of his employment. Admitting for the sake of the argument, what is not by any means conclusively shown, that appellee was bound by the terms of employment above referred to, yet it does not follow that he himself assumed all the hazards of the work he was ordered to do. The fact remains that he was really engaged in the business of track laying for appellant, and when directed to help do timbering he was required to do something outside and different from his regular employment. He was directed to do this work by the assistant foreman, who told him to go down there and help the men who were there at work. When he got there Haney directed him what to do. It mattered not whether Haney was head timberman or not so far as the responsibility of appellant is concerned, because the foreman had directed appellee to help these men and as appellee, not having been engaged in the work then being prosecuted, was ignorant of what was required, some one had to tell him what to do, it was therefore proper that one of the men whom the assistant mine manager had told him to assist, should direct him, and when Haney did so, he for the time being represented appellant. Appellee who was ignorant of the surroundings had a right to rely on Haney who was

familiar with the dangers and to assume that he would not be sent into a place of known danger, unwarned.

In I. C. R. R. Co. v. Swift, 213 Ill. 307 (316), it is said: "Where the servant is specifically directed by his superior to do the work in a dangerous manner, and injury results, he may recover, unless, indeed, the danger was so imminent that a reasonably prudent man would not have incurred it."

In this case we are of opinion the evidence shows that appellee was acting under the specific directions of appellant and those authorized by it to give him directions both in going to the place where he did and in doing the work done by him in the manner he did, and that therefore the above instructions given for appellee, were not erroneous. Fourteen of the instructions offered by appellant were refused by the court and counsel for appellant insist that all of the refused instructions, except the seventeenth, should have been given.

Defendant's refused instructions Nos. 1, 4, 5 and 8 were all properly refused upon technical grounds, at least, for the reason they stated that certain rules of law would apply in case the jury found the appellee was employed by the defendant to go into the fifth southwest entry in its mine for the purpose of helping to timber up said entry, etc., when as a matter of fact there was strictly speaking no evidence that appellee was employed to go into the fifth southwest entry of the mine for the purpose of helping timber up the same. Appellant however gets the benefit of the substance of the objections made to these instructions by the objections to the others which were free from the fault above named. Several of the refused instructions contained in effect the statement made in the third that "if you believe from the evidence that plaintiff was working for the defendant in helping to timber up the fifth southwest entry in defendant's mine at the time he was injured, and that the danger of being injured by falling slate or roof was one of the risks

which was usual and ordinary and incidental to the work of timbering and helping timber in coal mines, then you are instructed the plaintiff cannot recover under the second or third counts of the declaration." The vice of this instruction and the others containing the same theory is that they entirely ignored appellee's defense, that he was at the time he was injured acting under specific directions from appellant or its authorized agent.

Refused instruction 9 attempted to lay down the law in a case where the employe was left to his own discretion as to how he should do his work, but in this case the uncontroverted evidence shows that appellee was specifically directed where to go, what to do and how to do it, and what is here said will furnish the reason why several other of the refused instructions were objectionable. Some of the refused instructions stated that the rule requiring an employer to use reasonable care to provide a reasonably safe place for his employe to work in had no application to a case where an employe is sent to make an unsafe place safe and has knowledge of the purpose for which he is sent. The general rule of law upon this subject is laid down in Kelleyville Coal Co. v. Bruzas, 223 Ill. 595, where it is said: "The rule which requires the master to use reasonable diligence to furnish a reasonably safe place for his employes to work has no application to those whose duty it is to make dangerous places safe. Such employes assume the additional hazards of their employment and necessarily so." In the same case it is also said: "If the mine manager or his assistant, had recklessly ordered the deceased into the place of danger without proper warning, the defendant could have been properly held liable."

In the case before us the action of Haney, who, we think, under the uncontradicted evidence, must be held to have represented and stood in the place of appellant, in ordering appellee to go into a place known to Haney to be extremely dangerous, was very reck-

less and appellant should properly be held liable for such action.

Upon a careful examination of appellant's refused instructions, we are of opinion the court did not err in refusing to give them to the jury. As appellant's counsel does not claim in his argument that any error was committed than those relating to the instructions and as none appears to us from an examination of the record, the judgment of the court below will be affirmed.

*Affirmed.*