CHICAGO—FIRST DISTRICT—MARCH, 1911.    87

Smith v. Philadelphia & Reading Coal & Iron Co., 160 Ill. App. 87.

## Clarence Smith, Appellee, v. Philadelphia & Reading Coal & Iron Company et al., Appellants.

### Gen. No. 15,518.

1. NEGLIGENCE—*rule res ipsa loquitur defined.* The doctrine *res ipsa loquitur* only applies where the accident is such as in the ordinary course of events does not happen if those in control use proper care.

2. CONTRIBUTORY NEGLIGENCE—*when person standing near hatchway not guilty of.* Held, under the evidence, that the plaintiff in this case who was injured by being struck by a clam while standing near an open hatchway was not guilty of contributory negligence as a matter of law but that the question was one which should be left to the determination of the jury.

3. REMOVAL OF CAUSES—*when refusal to grant not subject to review.* In the absence of an exception the ruling of the court in refusing to order the removal of a cause is not subject to review.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1909. Reversed and remanded. Opinion filed March 16, 1911.

WINSTON, PAYNE, STRAWN & SHAW, for appellants; JOHN D. BLACK and JOHN C. SLADE, of counsel.

DANIEL L. CRUICE, A. S. LANGILLE and JACOB C. LEBOSKY, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

We feel obliged, after a careful consideration of the record in this cause, to reverse the judgment from which this appeal was taken and remand the cause for a new trial. Under these circumstances we shall follow our usual custom in such cases of refraining from any further discussion of the evidence than is necessary to explain our decision. It is to be regretted that by the case as it is presented in the record we feel ourselves forced to a conclusion which

does not determine, or perhaps even tend to determine, a controversy which arises from an accident that took place almost six years ago; but we see no alternative.

August 18, 1905, the plaintiff was so injured as to render necessary the amputation of his right foot. He had shipped the day before as wheelsman on the steamer Maryland, which belonged to the Inter-Ocean Transportation Company. The injury occurred while the vessel was unloading at the Philadelphia and Reading Coal and Iron Company's dock in South Chicago. The Philadelphia and Reading Coal and Iron Company was doing the unloading. The defendant Sattler was a foreman for that company in the work. At the time of the accident he was in the hold, where the accident occurred, with a gang of men employed by the Coal Company and not far from the plaintiff. Besides the plaintiff there were in the hold several other employes of the Coal Company, who were engaged in unloading the cargo, and several of the crew of the boat, who were doing ship work. Who sent the plaintiff to the hold does not appear, but he testified that the first mate gave orders to the men on board during the two days that he was employed on the Maryland, and that although a wheelsman when out on the lake, he "was supposed to do ship work" when the boat was in port, and that ship work consists of keeping repairs up, wiping, sweeping, keeping the boat clean, keeping the steering gear in shape, patching holes in the hold of the boat and fixing her up for the next cargo.

When the accident happened the plaintiff was on the port side of the boat, close to its "skin" or lining and under the deck. But he was just abreast the opening of a port scuttle hatch, the port combing of which was five or six feet only to the starboard of the port rail and lining. He thus describes what he was doing and the accident, and this is practically all that the record contains to inform us of the cause of, manner of, or responsibility for, the injury.

"I was stopping up some holes in the lining of the boat with some boards and other material, such as oakum. I had patched up three or four holes with boards (there was part that was large enough to be patched with boards), so I saw a couple of seams open along the edge of the boat from the wing, and took my knife and some oakum and filled one seam, and then I walked out and got some more oakum, and I was filling another seam, and while I was filling the seam there, a clam came down the hatch and it swung over on to the port side and lowered on to my foot and cut my right foot off and smashed my left foot."

The "clam" was an ordinary coal unloading device. It was a heavy, clamshell-shaped steam shovel, opening and closing automatically, or otherwise, to take up and release the coal, and was hoisted and dropped by steam power.

One witness for the plaintiff testified: "They have got what they call an apron, and they lower the clamshell on the apron, and when they get it on the center of the hatch they lower it into the hold."

The same witness says: "That clam came down— it opened up just as soon as it got clear of the scuttle hatch and swung right over on the wing and dropped. It dropped right down on the deck. It dropped on his (plaintiff's) feet."

The plaintiff testified that the engine which operated the hoist was on the dock some distance back from the edge of it. The captain of the boat said that the "apron" spoken of was a boom that ran out over the boat from the dock thirty or forty feet above the main deck as far as the outer or starboard rail of the boat, and that cables ran down from that boom attached to the clam and dropped the clam on the coal. The floor of the hold was 23 or 24 feet below the hatch and main deck. An engine driver named DeVries in the employ of the Philadelphia and Reading Coal and Iron Co. was running the steam engine during the unloading of the boat. He was made a defendant to this

suit, but the trial judge at the conclusion of the plaintiff's evidence instructed the jury to find him not guilty.

The jury found the other two defendants, the Philadelphia and Reading Coal and Iron Company and the foreman of the gang of men unloading the boat, William Sattler, guilty, and assessed the damages at $15,000. Judgment on the verdict followed and this appeal was taken from it.

On the one side we are called on to say that the doctrine of *res ipsa loquitur* applies,—that there must have been negligence on the part of the defendants because otherwise the "clam" hoist which struck and destroyed the plaintiff's foot could not have hit him, since he "had about six feet of solid deck above him for protection" and was at least "ten or eleven feet from the perpendicular line on which the clam should have descended through the port scuttle hatch," and "twenty-five feet from the place on which the clam should have been dropped to take its load of coal."

On the other hand it is insisted that not only should we reverse this judgment without remanding the cause, for the reason that no negligence of the defendants, or either of them, was shown by the evidence, but also for the reason that negligence of the plaintiff not only contributory, but the sole producing cause of the accident, was so manifest from that evidence that no reasonable minds could have any doubt of its existence.

"The unloading had been in progress two days at the time" (of the accident) "and continued during all the first day he" (plaintiff) "was there and the morning of the day he was injured." "No necessity compelled him, no unusual situation confronted him. With full knowledge of what was being done, he deliberately stood under the open hatchway, through which he knew the 'clam' would descend," say counsel in their argument for appellants.

We cannot accede to either of these propositions. The rule laid down by the Supreme Court in Ill. Cent.

R. R. Co. v. Swift, 213 Ill. 307, that the doctrine of *res ipsa loquitur* only applies where the accident is such as in the ordinary course of things does not happen if those in control use proper care, takes this case from under the operation of that doctrine, for there is no sufficient evidence that this accident might not, in the ordinary working of the device have happened to anybody who, at any time the clam came through the port hatch was standing where the plaintiff was standing, nor any evidence that there was anything unusual in the swinging or dropping or general management of the "clam" or hoisting apparatus, the change of which might have prevented the accident.

Counsel say that the starboard hatch should have been used, and that the clam was swung to port when it should have been swung to starboard; but the record leaves us almost entirely in the dark as to what control of the list or motions of the "clam" was possible in the hoisting or dropping, or what method was adopted as to carrying it to the coal when it reached the hold, or whether the starboard hatch was open, or had been used that day, or whether there were any circumstances which justified the plaintiff in believing that it, rather than the port hatch, was to be the entrance place of the heavy coal shovel.

Indeed so scanty is the record on the subjects we should like to have known about, that one finds it hard to resist the impression that the counsel in the litigation below were more persistently bent on vindicating their theories of the burden of proof than in elucidating all the facts that could be uncovered concerning the accident.

But it is plain to us that in this present record proof of the defendants' negligence does not exist which can justify the verdict. In another trial material factors may be added to the situation, determinative of this matter.

Nor can we, on the evidence in this record, say that plaintiff was guilty of contributory negligence.

The statement of appellants' brief that the plaintiff "stood under the open hatchway" is not true according to the letter, as counsel for appellants concede in their reply briefs. He stood several feet away from the hatchway. But he was exactly abreast of it within a comparatively small danger zone. The record does not sufficiently show the conditions under which he was there,—the reasons that he had to know or not to know that the clam might come through the port hatch, and at the end of a sixty foot cable might swing somewhat to the port side, nor what notice, actual or constructive, he had to warn him of the coming danger. We do not, in other words, find enough in this record to justify the verdict, nor, on the other hand, to warrant us in depriving the plaintiff of an opportunity to make, if he can, before another jury, a better case, when the facts are more fully elicited. In another trial we hope justice may be done between the parties by a determination based on sufficient evidence.

The appellants presented a petition for the removal of the cause from the court below to the United States Circuit Court. Its denial is assigned for error by the appellants here, but not argued. The question is not before us, since no exception to the ruling of the trial judge on it was preserved.

The questions arising on the rulings on the admission of evidence are not of a nature which make them likely to recur in another trial, and need no notice, in view of our disposition of the cause, on other grounds.

The judgment of the Circuit Court is reversed and the cause remanded to that court.

*Reversed and remanded.*