## KOCH
### v.
## CHICAGO & N. W. RY. CO.
### No. 10858.

United States Court of Appeals
Seventh Circuit.

Dec. 3, 1953.

Louis G. Davidson, Chicago, Ill., Arthur Ryan, Chicago Ill , for plaintiff-appellant.

Charles F. White, Edward J. Fleming, Chicago, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an action to recover damages for personal injuries to the plaintiff, Louis W. Koch, suffered while he was unloading express packages and parcels from the defendant's railroad car, which injuries were alleged to have been caused by the negligence of the defendant in so stopping its train and then in refusing to move it, which action and refusal to act resulted in the plaintiff being obliged to assume a dangerous position in which to work.

At the close of the plaintiff's evidence and again at the close of all the evidence, the defendant moved for a directed verdict. Rulings on the motions were reserved, and the case was submitted to the jury. The jury being unable to agree on a verdict, the District Court entered judgment for the defendant in accordance with the motion for a directed verdict. From this judgment the plaintiff appeals.

Considering the evidence and all reasonable inferences favorable to the plaintiff, the relevant facts are as follows: The accident occurred August 24, 1948, at about 10:00 A. M., at the defendant's station in West Elgin, Illinois. The track here ran in a northerly and southerly direction, and the east wall of the station building was located parallel to and 15 feet west of the track. A platform of crushed stone between the station and the track extended beyond the building in each direction.

The plaintiff was a truck driver employed by the Railway Express Agency, and it was his duty to meet the defendant's northbound local No. 703 to deliver and pick up express shipments. In taking express off the train he was subject to the orders and directions of the conductor, and a contract between the railroad and the Railway Express Agency required the plaintiff to do his work promptly. He was assisted in the unloading by a messenger who rode the express car.

It was the plaintiff's habit to park his truck on the platform north of the station building, facing west, and thus be prepared to back up to the doorway of the express car when the train arrived. The doorway was four or five feet wide and located in the forward part of the car, about ten feet from the front end. The truck which plaintiff drove was a little more than 16 feet long and the bed was eight feet wide. The train was customarily stopped so that the forward part of the express car would be out in the clear north of the station building.

The plaintiff could then back his truck squarely up to the doorway at a right angle to the car.

On the morning of the accident the plaintiff parked his truck in the usual manner to wait for the arrival of the train. However, when the train arrived it stopped short of the accustomed stopping place so that the front end of the express car was about ten feet south of the north end of the station building. The entire length of the express car thus remained directly opposite the station building, leaving the doorway accessible only from the 15 foot platform between the car and the building. This did not afford sufficient space for the plaintiff to back his truck against the doorway at a right angle as it was his custom to do. He asked the fireman to move the train forward so that the doorway would clear the station building, but this request was refused.

The plaintiff thereupon drove his truck around the station building and then north onto the platform between the express car and the building. (Rules of the Express Agency forbade backing the truck on the passenger platform.) As plaintiff moved his truck, he saw the conductor and asked him to move the train forward so that the express car would be in its customary location, but the conductor also refused and told the plaintiff to go ahead and do his work. Being unable to back his truck squarely against the doorway, the plaintiff backed it at an acute angle against the express car, with the right rear corner of the truck at the north side of the doorway and the left rear corner about six or seven feet out from the car. To take the packages from the messenger working inside the express car, the plaintiff, facing the south, then straddled the triangular space between the car and the back of the truck, with his left foot on a metal runner along the inside of the doorway on the floor of the car and his right foot on the floor of the truck bed. The floor of the truck bed was three feet and two inches from the ground and the floor of the express car

was 15 inches higher. The plaintiff was 49 years of age at the time, he was five feet, nine inches tall and weighed about 180 pounds.

That morning there were 20 or 30 express packages to be unloaded. Small packages were handed to plaintiff several at a time. After working in this manner from five to seven minutes and after all of the smaller packages had been handled, the messenger handed him a package weighing about 75 pounds. As he took the box the plaintiff lost his balance, his left foot slipped from the car floor and he fell to the ground, striking his left buttock on the edge of the car doorway and suffering the injuries complained of.

It is the plaintiff's contention that the defendant was negligent in stopping its train so that the express car door was opposite the station and in refusing to move the train forward when requested by plaintiff, because defendant should reasonably have foreseen that if the express car remained opposite the station building, the plaintiff, being unable to back his truck squarely to the doorway, might adopt a more hazardous method of transferring the express and thereby be injured.

The District Court, in entering judgment for the defendant, expressed doubt that any negligence on the part of the railroad was shown, but its decision for the defendant was based on the ground that the plaintiff had chosen an obviously dangerous way to work, and, therefore, "[h]is negligent act in placing himself in a dangerous and awkward position was the proximate cause of his injury."

■ We are constrained to agree with the District Court. Since federal jurisdiction in this case arises by reason of the diverse citizenship of the parties, the law of Illinois is controlling. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The law is well settled in Illinois that one cannot expose himself to a danger which he might have avoided through the exercise of

reasonable care for his own safety and then recover damages for a resulting injury. Illinois Cent. R. Co. v. Oswald, 338 Ill. 270, 170 N.E. 247; Wilson v. Illinois Cent. R. Co., 210 Ill. 603, 71 N.E. 398; Beidler v Branshaw, 200 Ill. 425, 65 S.Ct. 1086. And while it is true that ordinarily the question of the plaintiff's own negligence is a matter to be considered by the jury, "* * * yet, when there is no conflict in the evidence, and the court can clearly see that the injury was the result of the negligence of the party injured, it should not hesitate to instruct the jury to return a verdict for the defendant." Illinois Cent. R. Co. v. Oswald, 338 Ill. 270, 275, 170 N.E. 247, 249.

In this case we accept, as we must, that version of the accident most favorable to the plaintiff. Nattens v. Grolier Society, 7 Cir., 195 F.2d 449, 450. But, having done that, we are still confronted with the fact that the plaintiff, a man approximately 50 years of age, rather heavily built, knowing that some of the express to be handled might be quite heavy, deliberately chose to straddle the triangular space between the express car and the back of his truck, with his left foot resting on a metal runner which was six inches inside of the car and 15 inches above the bed of the truck where he placed his other foot. In this position the risk of injury was obvious and was recognized by the plaintiff who testified that the position he assumed was an awkward one and that he considered it to be hazardous. Under these circumstances we can see no escape from the conclusion that the plaintiff's injury was, as a matter of law, the direct result of his own negligence.

The plaintiff contends that if he had been working on the ground there would also have been a risk of injury. However, the physical facts do not support that argument. The bottom of the truck bed was only slightly more than three feet off the ground and the floor of the express car was only 15 inches higher. There is no evidence to show, nor any reasonable inference which might be drawn, that it would not have been feasible for the plaintiff to stand firmly on the ground and handle the packages at these heights. No reason appears why the plaintiff could not easily have taken the packages from the messenger who was standing inside the express car and have placed them in the truck, pushing the packages towards the front of the truck when necessary, or why he could not have stacked the express packages on the ground as they were taken from the express car and then have later loaded them into his truck. Of course, either method would have entailed a little more work by plaintiff but it would have accomplished the unloading with equal or greater dispatch than the awkward manner of handling the packages which he attempted.

The plaintiff stresses the fact that he was required to do his work promptly and that he was subject to the conductor's orders. He says that the method he chose for unloading was necessary to avoid delaying the train which was already a few minutes late. But no one could reasonably infer that the work could be done as quickly in the awkward position of straddling the open space between the car door and the truck as it could have been done by plaintiff's standing firmly on the ground and unloading the express to the ground. The personnel in charge of the train were only interested in having the packages promptly removed from the train. It was immaterial to them how much time the plaintiff might spend in loading the packages into his truck after the train passed on. Nor was it suggested that the plaintiff had been given any specific instructions by any member of the train crew as to the manner in which the express packages were to be taken off of the defendant's train. For all that appears in the record the plaintiff had full discretion to perform the job of unloading the car in any method or manner he might choose. The plaintiff selected what he apparently considered to be the most convenient method of work for him, although it was obviously the most

precarious method. The Supreme Court of Illinois, in Illinois Cent. R. Co. v. Swift, 213 Ill. 307, at page 316, 72 N.E. 737, at page 740, announced the rule governing this situation when it stated:

"Where * * * the employee is not directed to do the work in a specific manner, but is given a general order to perform the task, and is himself left to use his own discretion as to the manner in which the work shall be done, and there exists a safe way and a dangerous way, which are equally open to him, if he selects the unsafe method through heedlessness, or because it involves less exertion on his part, and injury to his person results, he cannot recover."

See also Pennsylvania Co. v. Lynch, 90 Ill. 333; St. Louis Bolt & Iron Co. v. Brennan, 20 Ill.App. 555; Southern R. Co. v. Edwards, 5 Cir., 44 F.2d 526.

The judgment of the District Court is Affirmed.