Isaac Doyle, impleaded, &c., Appellant, *v.* Andrew M. Wiley, Appellee.

APPEAL FROM PEORIA.

When a party files a bill, the statute authorizes him, before issue joined, to take depositions to substantiate its averments; and he may proceed to take his depositions *de bene esse*, without an order for that purpose.

Should the necessity for such depositions be superseded by the answer, the party who took them must pay the costs.

W. filed his bill; before issue was joined he gave notice and took depositions; afterwards he amended his bill, which he dismissed; he then filed another bill. *Held*, that the depositions taken in the first suit, could be read as evidence in the second, and that perjury may be assigned on such depositions, the parties and matter in suit being the same.

Three parties, each having improvements on separate portions of a quarter section of land, which was owned by another, entered into an agreement that each should endeavor to purchase the land for the benefit of all; that two of them should have 40 acres each, and the other the residue; one of them purchased the land in the name of his brother. *Held*, that he should convey to the others; and that a quarter section of land will be presumed to contain 160 acres of land, unless the contrary is shown.

Where a contract was left with a party for safe keeping, who swears that he has made diligent search among his papers and cannot find it, its contents may be proved.

It appears that the second bill filed in this case was a tr⸱, script of the first bill as amended, except that the oath⸱ or the defendants to their answers were waived. The op⸱ ⸱on gives a statement of the facts.

The decree in this case was entered by order of Peters, Judge, at May term, 1854, of the Peoria Circuit Court.

Manning and Merriman, for appellant.

N. H. Purple, for appellee.

Doyle *v.* Wiley.

CATON, J.  As we think, the most important and the most difficult question in this case is, as to the admissibility of the depositions taken in the former suit, and without which this bill cannot be sustained.  The depositions were taken in a former suit between the same parties, and involving the same subject-matter which is set up in this bill.  But the depositions were taken before any issue was formed, or even any answer was filed in that suit, although upon regular notice to the defendants.  After the depositions were taken an answer was filed, and subsequently the bill was amended, and then dismissed by the complainant, when this bill was immediately filed.  The court allowed those depositions to be read on the hearing in support of this bill.  Had the suit been at issue when those depositions were taken, it is not denied that it was proper to make the order for reading them in this suit.  The argument is, that at the time the depositions were taken, there was no issue to which they could apply.  That as there was nothing yet to prove, the depositions were entirely irrelevant.  That as the testimony was not relevant to any issue in the suit, perjury could not be assigned upon it, and hence it lacks one of the important safeguards against perjury, to which the party was entitled.

There was certainly no issue formed at the time the depositions were taken, but it does not follow that the depositions were necessarily irrelevant, or that perjury could not be assigned upon them.  Depositions taken before an issue is formed, are called *de bene esse* depositions, and have been always known to the courts of chancery in England, and it was never heard that they should be treated as irrelevant, or that perjury could not be assigned upon them, because no issue was yet formed in the suit.  It is true such depositions could not be taken without a special order of the court for that purpose.  Nor, indeed, could any depositions be taken in a chancery suit according to the English practice, without an order of the court for that purpose.  Our statute, however, has changed the practice on this subject, and allows the party to take his depositions without any leave or order of the court.  And the doubt with us has been, whether the statute dispenses with the order for taking depositions in all cases, or whether the order is still required for taking depositions *de bene esse,* for there can be no doubt that the legislature never designed to prohibit the taking of such depositions altogether.  Section 12, chapter 40, R. S., provides: " Whenever the testimony of any resident witness or witnesses shall be necessary in any suit in chancery in this State, it shall be lawful for the party wishing to use the same, to cause the deposition or depositions of such witness or witnesses to be taken before

any justice," &c. The statute then prescribes the mode of taking the deposition, and that depositions of witnesses residing in foreign counties to be read in actions at law, may be taken in the same way; and then the 13th section declares, that "every examination and deposition which shall be taken and returned according to the provisions of this chapter, may be read as good and competent evidence in the cause in which it shall be taken, as if such witness had been present and examined in open court on the hearing, or trial thereof."

The first section quoted, was certainly designed to supersede the necessity for getting an order of the court for the taking of depositions, and there can be no good reason for saying that it was the intention of the legislature to dispense with such order in one case and not in another. Whenever the testimony of a witness shall be necessary in any suit in chancery, the statute says his deposition may be taken. The argument is, that no testimony is necessary till the answer is filed and an issue formed, so that it is certain that the complainant is obliged to prove some part of his case, and that it is only in case of such necessity that the statute authorizes any deposition to be taken ; and that any deposition which is taken without such necessity is not sanctioned by law, and that the witness could not be convicted of perjury upon such deposition. This, we think, would be carrying the rule further than was designed by the legislature. We are inclined to hold, that when a party files a bill, the statute authorizes him to take depositions to substantiate its averments, and at least, until they shall have been admitted by the defendant, such testimony is necessary for the complainant; and that he may proceed to take his depositions *de bene esse* if he chooses, without an order. If he does so, he must necessarily take the risk of having the costs to pay of such depositions, should their necessity be superseded by the answer of the defendant, the same as in the case of any other depositions taken *de bene esse*. The 11th and 12th sections of the act prescribe the mode of taking depositions, before what officers they shall be taken, the notices which shall be given, how returned, &c., and then the 13th says, that depositions, when thus taken, may be read as good and competent evidence in the cause in which they shall be taken. These depositions were taken in strict conformity to the statute, and were, therefore, legitimate depositions in the first suit, and that being the case it was not and could not be controverted that they were properly ordered to be read on the hearing of this suit, the parties being the same and the matter in suit the same.

The bill is filed to enforce the specific performance of a con-

Doyle *v.* Wiley.

tract. It alleges, and the proof shows, that Watkins, Wiley, and Isaac Doyle, had each improvements on separate portions of a quarter section of land which was owned by another person, but they did not know where to find the owner. The three entered into a written agreement, that each should use his endeavors to find the owner and purchase the land, and that the land should be purchased for the benefit of all, that is, that Watkins and Wiley should each have 40 acres of the quarter which was designated, and Doyle should have the balance, and that each should pay his proportion of the purchase-money. Isaac Doyle purchased the land in the name, and professing to act as the agent of his brother Thomas Doyle. Watkins sold his interest in the contract to Wiley, who tendered the requisite amount of the purchase-money, and demanded a deed in pursuance of the contract, which was refused, when he filed his bill and dismissed it as before stated, and then filed this bill. Several questions were raised upon the argument besides the one already examined. It was objected that the original contract which was proved to have been executed, was not shown to have been lost or destroyed. The proof on this point we deem abundantly sufficient. The contract was left in the hands of Harkness for safe-keeping, who swears that he has made diligent search among his papers and cannot find it. If such diligent search was made among his papers, he must have searched all his papers where it would be likely to be found, and it would be hard to tell what more he should have done to have made the search satisfactory. Both Harkness and Watkins swear to the contents of the paper, and they agree in every substantial particular as to its contents, and there is not the least possible discrepancy in their testimony, unless we go out of the record and presume that the quarter section of land does not contain one hundred and sixty acres. The laws of congress require the public lands to be surveyed into sections and quarter sections, the former one mile square, and the latter half a mile square, which gives to the latter one hundred and sixty acres, and the presumption is, that a quarter section contains that amount, unless the contrary is shown in the particular instance. The proof is satisfactory, that such a contract was made as is alleged in the bill.

The only remaining question is, whether the land was purchased by Isaac Doyle in the name of Thomas, for his own benefit, and with his own funds, and for the purpose of defrauding the other parties to the contract out of their rights to the land under the contract. The proof in the case shows a transaction so transparent that it leaves not a doubt on the mind, as

to its true character. The negotiation was commenced by Isaac in his own name, but after a time he began to use the name of his brother, and finally wrote a letter in the name of Thomas, whose name he signed to it, the bare inspection of which is sufficient to show that he used his brother's name for the purpose of covering up his own interest in the purchase, for some sinister purpose. The evidence does not show that Thomas manifested any interest in the matter, or that he was consulted about, or even advanced a dollar in money towards the purchase, while Isaac made several journeys to effect the purchase which was to deprive himself and his neighbors of the improvements which they had made on the land. He certainly showed a zeal to throw away, for himself and those with whom he had contracted, the benefits contemplated by the contract which is seldom observable in an honest man, who is ready and willing to carry out, in good faith, an obligation which he has assumed. Thomas did not live in the neighborhood of the contracting parties or of the land, but resided in a distant part of the State, and has never manifested, from the beginning, the least interest in the transaction or in the controversy. His zealous agent and brother Isaac, has had the whole burden to bear himself, so far as this record shows. There are a multitude of circumstances disclosed by this record, and which it would be tedious and unnecessary to refer to, all tending to the conclusion that Thomas Doyle never had a particle of interest in this purchase, and that Isaac Doyle has only used his name for the purpose of avoiding his liability to the other parties under the contract. Upon this point we do not entertain a particle of doubt, and we are of opinion that the circuit court was well warranted in rendering the decree which was entered.

The decree of the circuit court must be affirmed.

*Decree affirmed.*