ALLISON, Respondent, v. CHICAGO, ST. PAUL, MINNEAPOLIS, & OMAHA RAILWAY COMPANY, Appellant.

(158 N. W. 452.)

(File No. 3828.    Opinion filed June 27, 1916.    Rehearing denied August 31, 1916.)

1. **Negligence—Action Against Railroad—Injury to Automobile—Verdict—Sufficiency of Evidence.**

   In a suit by the owner of an automobile against a railway company, for injury to an automobile by its being run into by defendant's railway train while stalled upon the main track on a public highway crossing, near a depot platform, plaintiff claiming negligence of the engineer in not stopping the locomotive before it reached the automobile, defendant claiming the accident resulted from negligence of the automobile driver, held, there being a sharp conflict in the testimony concerning negligence, and one of the material questions being the distance away of the approaching train at the time the automobile stopped upon the track, plaintiff claiming that the train was over one-fourth of a mile away while defendant claimed that the engine was about 700 feet away, that the evidence supported the verdict in favor of plaintiff.

   Polley, P. J., dissenting.

2. **Same—Railway Company—Injury to Automobile—Degree of Care Necessary.**

   The agents and servants of railway companies in charge of

engines and trains are held and in duty bound to a higher degree of care and watchfulness when approaching a crossing of a public street in a town, village, or city, where persons and vehicles are presumed to be more numerous, than on public crossings in country districts. **Held**, further, in a suit by an automobile owner against a railway company for injury to an automobile by an engine running into it while standing across a railroad track on a public highway, that if the engineer saw the automobile go upon and stop across the track when the engine was 1400 feet distant, the jury was justified in finding that the engineer was negligent in running into the automobile.

3.  **Evidence—Depositions—Deposition Before Complaint Served, Competency—Due Process—Constitutionality of Practice.**

    Under Code Civ. Proc., Sec. 510, providing that either party may commence taking testimony by depositions at any time after service upon defendant, held, that a deposition taken upon notice after service of summons but before service of complaint and answer, was admissible in evidence, against the objection that there was nothing to show at the time the deposition was taken what issues were or would be involved in the suit. **Held**, further, that said section is not unconstitutional, against the objection that the effect thereof, if it permitted the taking and use of such deposition, would amount to taking of defendant's property without due process of law; said section relating solely to a matter of practice.

4.  **Evidence—Depositions, Irregularity in Taking Before Service—Cross-Examination, Waiver of Objection by Statute—"Service."**

    If there was any irregularity in the taking of a deposition before the joining of issues in the case, the same was waived by defendants taking part in and cross-examining the witness; and this notwithstanding defendant made the objection prior to the commencement thereof. The words "service upon defendants" in Code Civ. Proc., Sec. 510, providing that either party may commence taking testimony by depositions at any time after service upon the defendants, means service of process by which defendants are brought into court.

Appeal from Circuit Court, Minnehaha County. HON. JOSEPH W. JONES, Judge.

Action by Wirt H. Allison, against the Chicago, St. Paul, Minneapolis and Omaha Railway Co., for damages to plaintiff's automobile resulting from its being run into by defendant's engine and train. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Judgment and order affirmed.

*Geo. W. Peterson,* and *Cherry & Abbott,* for Appellant.

*Boyce, Warren & Fairbank,* for Respondent.

(1)   To point one of the opinion, Appellant cited: McBeth v. A. F. & S. F. R. R. Co. 148 Pac. (Kan.) 621; Ry. Co. v. Harvey, 228 U. S. 319; Ry. Co. v. Powers, 149 U. S. 43; Gast v. Ry. Co. 147 N. W. (N. D.) 796.

(2)   To point two of the opinion, Appellant cited: Northern Pac. Ry. Co. v. Tripp, 220 Fed. 286.

(3)   To point three of the opinion, Appellant cited:   Code Civ. Proc. Secs. 510, 515; Wm. Caraway & Sons v. Kentucky Refining Co. 163 Fed. 189, 191-192.

Appellant submitted that: In many of the code states, such as Ohio, California, Oregon, and others, an action is commenced by filing of the complaint. The issuance and service of the summons is a subsequent act; the summons calls upon defendant to answer the complaint already filed and refers to the complaint, thus enabling defendant to know the charge against him; and cited: Lanning's Rev. Stat. (Ohio) Secs. 8548, 8778, 8547; Code Civ. Proc. (Cal.) Sec. 405, 2020.

Respondent cited: Code Civ. Proc. Secs. 103, 106; Words and phrases, vol. 7, p. 6432, "service"; Sanford v. Dick, 17 Conn. 213; Cross v. Barber, 15 Atl. 69, R. I.; Code Civ. Proc. (N. D.) of 1905, Sec. 7272, 6832; Codes of Iowa of 1897, Sec. 4684, 3514; Gen. Stat. Minn. Secs. 7728, 8381, 7731.

(4)   To point four of the opinion, Respondent cited: Babcock v. Ormsby, 18 S. D. 358.

McCOY, J. [1, 2] This is an appeal, by the defendant, from a judgment awarding damages against it for the destruction of plaintiff's automobile on a railway crossing in Minnehaha county. The accident occurred at about 9:45 o'clock in the evening of July 14, 1913, and, at the time of the accident, the automobile was standing across the main track of defendant's railway on a public highway crossing and at a point about 30 to 40 feet west of defendant's depot platform, in the town of Ellis. Plaintiff claims that the collision resulted from the negligence of the engineer in not stopping the locomotive before it reached the automobile, while defendant claims the accident resulted from the negligence of the man in charge of the automobile. At the time

in question, the automobile was driven upon defendant's track by plaintiff's son, and as he was moving to the south and in the act of crossing the track quite slowly the engine of the auto ceased to work, and, the son failing to make said auto engine operate, the auto remained stalled upon the track in front of the approaching passenger train, composed of an engine and five cars. It appears that the son was not negligent in the handling of the automobile. The only material question for consideration is whether or not the evidence is sufficient to sustain the verdict in favor of plaintiff, finding that defendant was guilty of negligence in running said train into said automobile. As we view the case, there was a sharp conflict in the testimony bearing upon the facts upon which the negligence is claimed to be based. One of the material questions was the distance away of the approaching train at the time the auto stopped across the track. The son testified that when the auto stopped on the track he looked and saw the train coming from the west—that the train was then some distance west of the whistling post, which post is 1,320 feet west of the crossing on which the auto stopped. A bystander, who was on the depot platform, saw the train approaching before he saw the auto come on the track and stop; this witness testified that the train was from 40 to 60 yards west of the whistling post at the time the auto came upon the track. Defendant's engineer operating the engine of the train testified that he first saw the automobile coming from the north; that he got a glimpse of it as it came on the track; that he was about 690 feet west of the public highway crossing when he first saw the auto; that he then immediately applied the emergency brake, reversed the engine, and sounded the whistle. If the testimony offered by plaintiff was true that the train was 40 to 60 yards west of the whistling post when the auto stopped, and the testimony of the engineer is true that he saw the auto before it went upon the track, and as it went on the track, he had at least 1,400 feet within which to stop the train. There was testimony tending to show that a 1,500 candle power electric headlight, such as the engine in question was equipped with, will light up the track about 2,000 feet in front of the engine, and that an object,

like the body of a man or dog, lying on the track could be seen plainly 800 feet, and that a train, such as the one in question, can be brought to a stop within 600 feet. It also appears that the train in question had reduced speed to about 25 miles an hour at the whistling post. There was testimony showing that when the engine struck the auto it threw it off the track; that one of the coaches caught the top of the auto and carried it about 50 feet to a point nearly opposite the station; that the engine ran down past the station. It also appears that the public highway crossing where this accident occurred is on the main street in the town of Ellis. The fact that the train stopped in front of the station approximately where it would have stopped, had the auto not been on the crossing, indicates that but little attention was paid to the auto by the engineer. We are of the view that the question of negligence on the part of defendant was properly submitted to the jury, and that there was evidence sufficient to sustain the verdict in favor of plaintiff. The agents and servants of railway companies in charge of engines and trains are held and duty bound to a higher degree of care and watchfulness when approaching the crossing of a public street in a town, village, or city, where persons and vehicles are presumed to be more numerous than on public crossings in country districts more thinly populated. If the engineer in question saw this automobile go upon and stop across the track when the train engine was 1,400 feet distant, as some of the testimony tended to show, the jury was justified in saying that defendant's engineer was negligent in running into the auto of plaintiff.

[3, 4] Plaintiff offered in evidence the deposition of one Bahr, which was taken upon notice after the service of summons upon defendant but before the service of the complaint and answer. Defendant appeared specially at the taking of said deposition and objected to the taking thereof, on the ground that there was nothing to show what issues were or would be involved in the action, and that section 510, Code of Civil Procedure, is unconstitutional and void, and that the effect thereof would amount to the taking of defendant's property without due process of law. Counsel for defendant thereafter took part in the taking of said deposition and cross-examined said witness. Before the trial, defendant made and filed exceptions and objections to

said depositon, and on the trial objected, on the same grounds interposed, to the offer of said deposition in evidence. To the overruling of such objections, the defendant excepted and now urges such ruling as error. We are of the view that defendant's contention is not tenable. Section 510, Code of Civil Procedure, provides that "Either party may commence taking testimony by depositions at any time after service upon the defendants." We are of the view that this section in no possible manner could amount to the taking of defendant's property without due process of law; this section of statute law relates solely to a matter of practice and fixes a time after which testimony may be taken by deposition. Similar provision is found in the statutes of many states. We do not say but what either party, plaintiff or defendant, might be prejudiced by the taking of a deposition prior to the making up of the issues; but there is nothing in the circumstances of this case, so far as appears from the record, that could by any possibility have misled or prejudiced defendant by reason of the deposition in question having been taken prior to the making up or joining of the issues. Section 4101, Wisconsin Ann. Stat., provides that depositions may be taken at any time after the commencement of the action. In Sleep v. Heymann, 57 Wis. 495, 16 N. W. 17, under this statute, the Supreme Court of Wisconsin held that depositions might be taken before the issues were joined. Doyle v. Wiley, 15 Ill. 576; Harding v. Am. Glucose Co., 182 Ill. 551, 55 N. E. 577, 64 L. R. A. 738, 74 Am. St. Rep. 189. We are also of the view that if there was any irregularity in the taking of said deposition, before the joining of the issues, the same was waived by defendant's taking part in and cross-examinating the witness, notwithstanding defendant made the objection to the taking of the deposition prior to the commencement thereof. Miller v. McDonald, 13 Wis. 673; Jones, Ev. §§ 671-689; 6 Am. & Eng. Ency. Pl. & Pr. p. 483. The "service upon defendants" mentioned in section 510 means service of process by which defendants are brought into court.

Appellant urges many other assignments of error, all of which have been carefully examined, and we are of the opinion that no prejudicial error exists therein.

The judgment and order appeal from are affirmed.

POLLEY, P. J. (dissenting). After a careful examination of the record in this case, I am unable to agree with the opinion of the majority of the court. I believe the accident that caused the injury to plaintiff's car was the result of the negligence of the driver of the car. Defendant's railroad tracks, at the place of the accident, run in an easterly and westerly direction. Plaintiff's car approached the tracks from the north. The driver testified that, at the time he approached the tracks, he knew there was a train due to pass that point from the west at about that time; that, before he reached the crossing, he tried to look up the track to the west, but that a view of the tracks in that direction was prevented by obstacles of various kinds; that there was a side track some 40 or 50 feet north of the main track, and that, as he approached this side track, he reduced the speed of the car to less than 10 miles per hour; that, as he crossed the side track, he released the clutch of his engine, thinking the car had sufficient momentum to carry it across the main track. It became apparent to him, however, about the time the car reached the main track, that the momentum of the car was not sufficient to carry it over, and he threw in his clutch again but found that his engine had "died," and the car stopped directly over the main track. From the time the car reached the side track, the headlight of defendant's locomotive (approaching from the west) was in plain sight, but the driver did not see it nor look in that direction until after the car had stopped. In his failure to see the approaching locomotive and in releasing the clutch of his engine while in plain sight of said locomotive, I believe he was guilty of inexcusable negligence. After reaching the side track and after he could, by the exercise of the slightest degree of care, have seen the approaching locomotive, he had time either to have stopped his car before it reached the main track and permitted the train to pass ahead of him or he could, by applying the power of his engine, have crossed the main track and been out of the way of danger before the locomotive could have reached the crossing.

There was a conflict in the testimony as to the distance the locomotive was from the crossing when the car stopped. An eyewitness fixed the distance at about 1,400 feet. The engineer who was driving the locomotive fixed it at 690 feet. It is im-

material which is correct. The question is: Did the engineer act with reasonable promptness in bringing the locomotive to a stop after he discovered, or by the use of due care, might have discovered, the peril of plaintiff's car? He testified that he saw the car when it stopped on the track; that he was then 690 feet from the crossing, but that he did not realize at once that the car would not move on before he could reach that point; he estimated that about four seconds elapsed after the car stopped before he realized that it was stalled; that, as soon as he did realize that the car was stalled, he applied the emergency brakes and stopped his train as soon as possible; that his train moved a distance of from 100 to 125 feet after the car stopped and before he applied the emergency brakes; that he brought his train to a stop within 630 feet from the place where he applied the emergency brakes and 198 feet west of his usual stopping place at the depot in Ellis. From these facts, it is plain that, had he applied the emergency brakes as soon as he saw plaintiff's car on the track, the locomotive would have stopped before it reached the crossing, and no injury would have occurred. But this he was not required to do. The mere fact that the car stopped on the track, whether at a distance of 690 feet or 1,400 feet ahead of the locomotive, was not of itself sufficient to charge him with notice that the car was stalled. There was nothing about the manner in which it stopped to indicate to him that it was not under control of the driver or could not be moved at will. It is the duty of the engineer, or his fireman, to maintain a constant lookout for people or objects upon the crossing of a highway, but it is not his duty, as soon as he sees a person or an object upon a highway crossing, to immediately apply the emergency brakes and stop his engine as soon as possible. He has a right to assume that a person or an object will move off the track before the engine reaches the crossing, unless there is something about such person or object indicating the contrary. Conceding that the locomotive was some 1,300 or 1,400 feet west of the crossing, as plaintiff's witnesses claimed it was when the car stopped, I am unable to find any act or omission on the part of the engineer that constitutes negligence. He had a right to presume, until some event occurred to put him on notice to the contrary, that the automobile would move on in time to permit

the train to pass. I believe this case should be governed by the rule applied in McBeth v. Atchison, Topeka & S. F. Ry. Co. (Kan.) 148 Pac. 621, a case decided by the Supreme Court of Kansas, since this case was tried. In that case a judgment for the plaintiff was reversed. The court, in discussing the duty of the engineer in such emergencies, say:

"The engineman would not be expected to assume, at the very first instant of observation, that the automobile would stop on the track, or that something was the matter with it, so that it could not be cranked and driven or pushed off the track."

In that case, the first thing the driver did when his car stopped was to get out and try to crank his engine. This should have been some indication to the engineer, if he were at all familiar with the operation of automobiles, that the engine of the automobile was not working. In this case, the driver did not leave his seat or do anything at all to indicate that his engine was not working or that his car could be moved at will any instant. Indeed, he does not seem to have realized himself that he was not going to be able to get his car off the track until the locomotive was within 200 to 300 feet of the crossing.

I believe the evidence fails to show negligence on the part of the engineer, and that the judgment and order appealed from should be reversed.