The People of the State of Illinois ex rel. The Metropolitan Casualty Insurance Company of New York, Appellee, v. Calumet National Bank, Defendant. Chester D. Masters, Appellant.

Gen. No. 34,892.

Heard in the first division of this court for the first district at the February term, 1931. Opinion filed March 23, 1931. Rehearing denied April 6, 1931.

KIRKLAND, FLEMING, GREEN & MARTIN, P. J. MURPHY, GERALD RYAN and JOHN C. MELANIPHY, for appellant; ROBERT N. GOLDING and JOHN C. MELANIPHY, of counsel.

SILBER, ISAACS, SILBER & WOLEY, for appellee; FRED-ERICK D. SILBER, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

By this appeal Chester D. Masters (hereafter called respondent) seeks the reversal of an order finding him in contempt of court and committing him to the county jail of Cook county until such time as he offers to appear and testify and produce certain books, documents, etc., concerning the suit of The Metropolitan Casualty Insurance Company of New York, a corporation, (hereafter called complainant) against Calumet National Bank, a corporation (hereafter called defendant).

The original proceedings, out of which grew this contempt, arose on a bill filed August 21, 1930, by the complainant, alleging that defendant was the trustee under a certain indenture of trust which provided for the issue of $250,000 in bonds, on which the complainant was the guarantor; that it was the duty of defendant not to authenticate the bonds until the issuer, a building corporation, had performed all conditions precedent, which included the building of a 12-story apartment building at Flint, Michigan; that the defendant notwithstanding its duty had so authenticated the bonds and delivered them to the Illinois Standard Mortgage Company, a corporation, the underwriter of the issue; that by virtue of a conspiracy with the defendant and persons named in the bill the proceeds of the sale of the bond issue were applied to the payment of a personal indebtedness to the defendant due from a man by the name of Fred C. Bristol; that the issuer of the bonds was insolvent and that the building had not been built and as a result the complainant, as guarantor of the principal and accrued interest of the entire bond issue, found itself compelled to pay the bonds and had paid some of them and was obli-

gated to pay the remainder and had absolutely no security of any kind. Complainant prayed an accounting from the defendant.

Attached to the bill of complaint was a copy of the underwriting agreement, which provides that the underwriter was authorized to purchase the bond issue for $250,000, and was further authorized to pay to the trustee from the proceeds such sums as might be necessary to pay interest and was authorized to hold at all times sufficient funds out of the proceeds to complete the building.

August 26, 1930, and before the cause was at issue, the complainant caused Edward J. Vogel, a notary public, to issue a subpoena *duces tecum* against the defendant requiring it to produce on September 3rd certain papers duly specified in the subpoena touching the matter alleged in the bill. The subpoena was served upon the respondent, the vice president and trust officer of the defendant.. The respondent did not appear before the notary or respond to the subpoena. September 13, the notary filed a petition in the superior court setting forth the above facts and on that date an order was entered by the court directing that a subpoena *duces tecum* be issued out of the clerk's office, as prayed by complainant. Such subpoena was issued calling for the production of the same papers as in the subpoena issued by the notary, but this subpoena issued by the court ran to the respondent as vice president and trust officer of the defendant. This subpoena was served upon him and on September 17, he appeared before the notary and answered certain questions, namely, that he was the' vice president, trust officer and director of the defendant bank. In answer to the questions as to the papers called for by the subpoena he said in substance that he stood mute and refused to answer except to say that he had not produced any of the papers called for.

September 19, defendant filed a demurrer to the bill, challenging the right of complainant to maintain its

suit in equity and asserting that the damages, if any, were liquidated and that the suit should have been at law.

September 25, a transcript of the proceedings before the notary was duly certified to the court and complainant petitioned the court to enter an order directing the respondent to answer the questions asked before the notary and to produce the papers called for by the subpoena. Respondent filed an answer to the petition asserting that the order entered by the court directed merely that a subpoena *duces tecum* issue, and was not a subpoena that he should testify; that no notice had been served upon defendant of the taking of the deposition, as required by section 24 of the Evidence Act, Cahill's St. ch. 51, ¶ 24; that the cause was not at issue and there had been no showing that it was necessary to produce the documents called for by the subpoena; that the documents were the property of the defendant and that respondent had no legal right to remove them from the rightful possession of the defendant.

October 6, 1930, the court entered an order requiring the respondent to appear before the notary on October 9 to answer questions and to produce the said books and papers. On this last date respondent failed to appear. His attorneys were present when this order was entered, although from a subsequent answer filed by him it appears that he was not present at the time and was not notified that this order was entered. On October 9 the respondent not appearing, the notary continued the taking of depositions until October 14, and complainant procured from the clerk of the superior court another subpoena *duces tecum* in all respects like the former subpoena. This was served upon respondent, requiring him to appear October 14, which he failed to do.

Subsequently, complainant filed a petition setting forth the above facts and asking for a rule to show cause. Pursuant to the rule, the respondent filed a

verified answer, in which he repeated, in substance, his first answer, questioning the authority of the court to issue the order and asserting that he did not know until after October 9 that he had been ordered to appear on that date before the notary; also denying the power of the clerk of the court to issue the last subpoena of October 10. There was a hearing upon the petition and answer and the court thereupon adjudged that respondent was in contempt and he was ordered committed to the county jail of Cook county to be there kept until he offers to appear and testify at such time and place as the court may direct and to produce and bring with him the books and documents described in the subpoena *duces tecum*.

Respondent's first point is that, while the demurrer was pending the cause was not at issue and that under section 9 of the Evidence Act (Cahill's St. ch. 51, ¶ 9) books or writings may not be produced by the opposite party unless they contain evidence "pertinent to the issue," citing *Lester v. People,* 150 Ill. 408; *Carden v. Ensminger,* 329 Ill. 612; and *Wynn v. Taylor,* 109 Ill. App. 603. To this complainant replies that this is not a proceeding under section 9, but under section 24 of the Evidence Act; that under this latter section it is unnecessary that there should be an issue and no showing of the necessity or pertinency of the evidence is required. It was held in *Wynn v. Taylor,* 109 Ill. App. 603, following the earlier cases, that section 9 was intended to obviate the necessity for a bill of discovery. The notice to produce books under this section must be based upon some showing by affidavit that the production of the documents was necessary and pertinent to the issue. In *Lester v. People,* 150 Ill. 408, it was held that the application for the production of the documents should be denied unless a showing was made that the evidence sought or books required contained evidence pertinent to the issue. To the same effect was *First Nat. Bank v. Mansfield,* 48 Ill. 494.

The instant attempt to procure the testimony of the

respondent before a notary public was clearly not under section 9 but was under section 24 of the Evidence Act. This provides, in substance, that when the testimony of any witness residing or being within the State shall be necessary in any suit in chancery, the party wishing to use the same may cause the deposition of such witness to be taken before any notary public or other named officials on giving certain notice. It is the familiar statute under which depositions in chancery cases are taken. In *Schmidt v. Cooper,* 274 Ill. 243 (affirming 195 Ill. App. 531), after an extended discussion of this section, it was held that:

"Our statute gives a complainant a right to take depositions to prove the averments of his bill before issue formed."

And further the opinion said: "Necessarily, if complainant has the right there must be power in the court to enforce the right, and there is no ground for distinction, in the exercise of the power, between a case where testimony is necessary after issue is formed or before. To deny such power would render a court impotent and deny the power to secure testimony in any case or at any stage of any case. The statute permits the taking of depositions either before or after issue is formed, but if a witness refuses to appear and testify, an order is necessary to enable the court to punish the witness for contempt, whether the deposition is taken before issue formed or upon a reference to the master after issue." See also *Hill v. Jeffery Co.,* 292 Ill. 490, in which the opinion says that it was "for the party to determine whether there was cause for taking the deposition. . . .

"The statute has declared under what conditions a deposition may be taken. . . . So long as the party is within the terms of the law there is no authority for the investigation of his motives." To the same effect are *Doyle v. Wiley,* 15 Ill. 576; *Harding v. American Glucose Co.,* 182 Ill. 551.

*People v. Rushworth,* 294 Ill. 455, cited by respondent, is not in conflict. There it was held that under section 36 of the Evidence Act the refusal to give testimony before a commissioner in Chicago who was appointed by a Canadian court could be punished in the local circuit court since the amendment to section 36 made in 1919. *Puterbaugh v. Smith,* 131 Ill. 199, declared a portion of section 36 unconstitutional, but this was prior to the amendment of 1919.

This question of whether a party is entitled to take a deposition without any showing of necessity or materiality was the subject of consideration by this court in the recent case of *Pennsylvania Tank Line v. Jordan,* number 34854, opinion filed March 2, 1931, where we held that such showing was not necessary, following *Schmidt v. Cooper,* 274 Ill. 243, and cases above cited.

In that case we also considered a further point made by respondent, namely, that while it was in form a chancery case, yet the bill showed that complainant should have brought its suit at law. We there held that the bill made out a prima facie case in chancery and that this was sufficient to give the right to complainant to proceed under section 24. We will not pass upon the demurrability of the instant bill in this court before the trial court has done so. Furthermore, the instant bill prays for an accounting, which is peculiarly within the jurisdiction of the chancery court.

Respondent says there was no order of court authorizing the clerk to issue a subpoena calling for his appearance on October 14. We hold that there was no necessity for procuring another order. Such order had already been entered September 13, authorizing the clerk to issue a subpoena, and there would be no necessity for filing another petition and procuring another order for the same thing.

It is argued that the order of the court entered September 13 did not authorize the taking of the testimony of the respondent but only to produce papers.

The definition of a subpoena *duces tecum* given by Bouvier (3rd revision), vol. III, page 3165, is: "A writ or process of the same kind as the *subpoena ad testificandum,* including a clause requiring the witness to bring with him and produce to the court books, papers, etc., in his hands, tending to elucidate the matter in issue."

It would be a strained construction to say that the command of a subpoena *duces tecum* could be complied with by the witness merely producing the documents called for and departing. Furthermore, the subpoena issued by the clerk of the court pursuant to the order called upon the respondent to testify and give evidence and also to produce the papers mentioned.

The proper practice was pursued in this case in issuing the subpoena to the vice president and trust officer of the corporation, as it is a well known principle that corporations can act and testify only through its officers. *In re Bolster,* 59 Wash. 655, 110 Pac. 547, 29 L. R. A. (N. S.) 716, where the president and vice president of a corporation were subpoenaed to produce books and papers of the corporation, but the witness refused on the ground that they contained trade secrets of the corporation and were privileged, it was held that the witness should be compelled to appear and testify and to produce the books and records of the corporation. The opinion quoted from *Wertheim v. Continental Ry. & Trust Co.,* 15 Fed. 716, as follows: "It may be inconvenient, and sometimes embarrassing, to the managers of a corporation to require its books and papers to be taken from its office and exhibited to third persons, but it is also inconvenient and often onerous to individuals to require them to do the same thing. Considerations of inconvenience must give way to the paramount right of litigants to resort to evidence which it may be in the power of witnesses to produce, and without which grave interests might be jeoparded, and the administration of justice thwarted."

A similar question was raised in *Wilson v. United States,* 221 U. S. 361. In the opinion written by Mr. Justice Hughes it was said:

"Where the documents of a corporation are sought, the practice has been to subpoena the officer who has them in his custody. But there would seem to be no reason why the subpoena *duces tecum* should not be directed to the corporation itself." The first subpoena in the instant case was to the Calumet National Bank, the defendant. The opinion in *Wilson v. United States,* 221 U. S. 361, further said: "A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt." See also *Dreier v. United States,* 221 U. S. 394.

Counsel for respondent characterized this as a "fishing expedition." We do not think so. The documents and papers described in the subpoena *duces tecum* were all material to the allegations of the bill of complaint.

Other objections are made by respondent which are not of substantial importance. The whole record leaves no doubt whatever that it was the disposition of the respondent to refuse to produce the documents or to attempt to do so or to give any testimony concerning the same. The proceedings followed the requirements of sections 24 and 36 of the Evidence Act. The finding of the court that respondent was guilty of contempt was fully justified and the order is affirmed.

*Affirmed.*

Matchett, P. J., and O'Connor, J., concur.