HELEN L. CONKLIN, Adm'r of the Estate of Ronald Conklin, Deceased, *et al.*, Plaintiffs-Appellees, *v.* STRUNK BROTHERS ASPHALT COMPANY, Defendant-Appellant.

Third District   No. 78-70

Opinion filed April 18, 1979.

Joseph B. Lederleitner and Robert Marc Chemers, both of Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago, and Andrew J. O'Conor, of Berry & O'Conor, of Ottawa, for appellant.

T. Donald Henson, of Herbolsheimer, Lannon, Henson and Duncan, P. C., of LaSalle, and Myers & Daugherity, of Streator, for appellees.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

Ronald Conklin was killed when his tractor-trailer truck went off west-bound Interstate 80 and landed in a trench excavated by the defendant, Strunk Brothers Asphalt Company, as a part of certain construction work it was engaged to perform by the State of Illinois. This is an action by the decedent's estate and the owner of the truck, Alvin G. Smith, d/b/a Gibb Smith Moving and Storage Company, for damages based upon defendant's negligence. A La Salle County circuit court jury returned a verdict for both plaintiffs.

At the time of this tragedy, the defendant was under contract with the State of Illinois to make certain improvements along a stretch of Interstate 80 in Bureau County, Illinois. The contract called for installing an under-drain system that would parallel the main highway section, the concrete area of the interstate, to provide a drainage facility for the granular material that was underneath the concrete. The system designed by the State included a pipe drain buried immediately adjacent to the concrete driving area. In order to lay the pipe it was necessary to excavate along the concrete driving area a trench approximately two feet in width and two feet in depth. The installation operation commenced with the excavation just described, followed by the laying of pipe, the back-filling with sand, and the capping with approximately five to seven inches of asphalt. This continual installation operation moved progressively down the road. At the end of each work day there was an open trench area.

Sometime late on the evening of November 14, 1972, the tractor-trailer truck operated by Ronald Conklin went off the road into the trench which had been excavated earlier that day.

On appeal, the defendant alleges five grounds for error: (1) there is no evidence that the defendant owed any duty to plaintiffs; (2) there is no evidence of negligence for breach of duty on the part of the defendant; (3) plaintiff's decedent failed to exercise due care; (4) defendant's conduct merely furnished a condition not a cause for the accident; and, (5) certain evidence as to the driving habits of plaintiff's decedent was improperly excluded.

■■ ■ Defendant's contention that no duty was owed to plaintiff's decedent is directly refuted by the recent supreme court decision in *Mora v. State* (1977), 68 Ill. 2d 223, 230, 369 N.E.2d 868, 872. Therein the court said:

> "Duties of contractors assume many shapes and forms. Contractors must: (a) adequately mark highway detours they have constructed (citations omitted); (b) warn of excavations they have created or exposed (*Hogan v. Hill* (1958), 229 Ark. 758, 318 S.W.2d 580; *Martin v. Farr Brothers Co.* (1918), 211 Ill. App. 235; *Huber v. Cornhusker Paving Co.* (1974), 191 Neb. 108, 214 N.W.2d 269; *Strakos v. Gehring* (Tex. 1962), 360 S.W.2d 787; *Ross Anglin & Son v. Brennan* (Tex. Civ. App. 1971), 466 S.W.2d 832; *Gilpatrick Construction Co. v. Wind River Ready-Mix Concrete Co.* (Wyo. 1970), 473 P.2d 586); * * *."

Defendant Strunk Brothers was a contractor, they created an excavation, and by reason of *Mora* they owed a duty to warn of the hazard which they created. Any other conclusion would be in absolute disregard of unequivocal language of the supreme court in the *Mora* decision and the authorities cited therein.

Defendant next contends that there is no evidence that its duty to plaintiff was breached or negligently fulfilled. We find support in the record for the conclusion reached by the La Salle County jury. William A. Hanna, an Illinois State trooper, was called to the accident scene at approximately 11:30 p.m. on the day of the occurrence. He testified that as he approached the site of the fatality, he travelled through six miles of construction zone demarcated by barricades placed at right angles to the roadway. The barricades were black and white and Scotchguard such that reflected headlight beams of approaching vehicles made the barricades appear illuminated. Some of the barricades had yellow lights on them which burned constantly. However, Trooper Hanna also testified that in the area of the open trench, not the previous six miles of construction zone where the trench had been back-filled and blacktopped, the barricades were sitting in the ditch. Further, he testified that the amber lights on the barricades in the open ditch were not burning. Finally, he indicated that the barricades in the immediate vicinity of the open ditch were parallel rather than perpendicular to the flow of traffic, such that the black and white and Scotchguard cross-

member would not reflect headlight beams of oncoming traffic. Richard Nelson was the general manager of defendant Strunk Brothers in November of 1972. At trial, he was questioned about the placement of barricades in the area of the excavation where the trench had not been back-filled. He responded that the barricades at that point in the construction site were parallel with the pavement and partially in the trench. He also testified that when barricades were so placed, a motorist approaching the construction area would not see the black and white and Scotchguard reflective cross-member. John E. Baerwald is a traffic engineer. He explained to the court that when barricades are placed parallel to the flow of traffic, a relatively small amount of area is visible; that is, the oncoming driver sees basically an end view of the barricade. He continued that the motorist's attention is focused down the highway and it is possible that such a highway traveller would not see the barricades so placed without an obvious effort. Wilbur Nelson was also an employee of defendant Strunk Brothers. He, too, testified that the barricades were placed parallel to the roadway and partially in the trench. Finally, Lawrence W. Gregg, an expert in the field of traffic engineering called by the defendant, testified that barricades placed perpendicular to the flow of traffic are more visible than barricades placed parallel to the flow of traffic.

■■ Thus the jury heard testimony that the defendant, which had a duty to barricade the trench, placed its barricades in a manner which substantially reduced their visibility in the precise area of the construction zone where the danger was greatest, that is, where the excavated trench had not been back-filled and blacktopped over. Such a placement of barricades could lull the motoring public into a false sense of security. In fact, if one had been travelling through six miles of construction zone waiting to pull off the highway onto the shoulder, such a placement of barricades may have caused Ronald Conklin to drive off the highway where the hazard was most serious. Such evidence, some of which came from defendant's own witnesses, seems ample to support a jury finding that defendant Strunk Brothers was negligent in performing its duty to warn of excavations it had created and exposed.

■■ ■ The defendant incorrectly contends that plaintiff's decedent was not, as a matter of law, in exercise of due care for his own safety. Defendant cites numerous cases which involve the issue of negligence in multivehicle collisions. Because of numerous factual differences, we do not believe these cases are controlling under the present facts. Defendant does cite, however, three cases which involve the issue of negligence where a single vehicle left the roadway. In each of those three cases, in distinction from the case at bar, there was before the court evidence of negligence which explained the departure from the roadway. In *Mizowek v. De Franco* (1975), 32 Ill. App. 3d 53, 335 N.E.2d 596, and *Enloe v.*

*Kirkwood* (1970), 120 Ill. App. 2d 117, 256 N.E.2d 459, there was eyewitness testimony that the motorist was travelling at excessive speeds. In *Pederson v. Kinsley* (1975), 25 Ill. App. 3d 567, 323 N.E.2d 562, the court heard eyewitness testimony that the motorist was not watching the direction of the vehicle's travel. In the case at bar there is no such evidence that the plaintiff's decedent was driving in a negligent manner. It is not, of course, negligent to use the shoulder of the road. In fact, it is common knowledge that careful drivers must occasionally use the shoulder of a road as a part of the public highway in emergency and other situations. (*Kinsch v. Di Vito Construction Co.* (1964), 54 Ill. App. 2d 149, 203 N.E.2d 621.) Ronald Conklin had a right to use the shoulder of the road, and where the defendant had placed barricades so they could not be seen without an obvious effort, the jury's conclusion that Ronald Conklin was in the exercise of due care for his own safety is not unsubstantiated by the record.

In its brief, defendant argues that its conduct was not the proximate cause of Ronald Conklin's injuries, but rather furnished a condition upon which the decedent's independent negligent actions operated to produce the injuries. The central issue in a proximate cause analysis is whether there was an intervening act sufficient to break the causal connection between the original wrong and the injury. In each case cited by the defendant, *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665, *Ferguson v. Southwestern Bell Telephone Co.* (1972), 8 Ill. App. 3d 890, 290 N.E.2d 429, and *Koch v. Chicago & N.W. Ry. Co.* (7th Cir. 1953), 208 F.2d 152, there was evidence of intervening negligence. As was pointed out above, the jury's finding that Ronald Conklin was not negligent and was in exercise of due care for his own safety is supported by the record. There being no intervening negligent act, we hold that *Merlo* and *Ferguson* and *Koch* are not controlling.

■■ Also at issue on this appeal is whether the trial court erred by excluding from evidence certain statements made in depositions of Ronald Conklin's widow as to his driving ability. We are reminded that:

> "The admission of evidence rests largely in the discretion of the trial court and its decision should be reversed only when such discretion has been clearly abused. (*Department of Public Works & Buildings v. Dalessio* (1968), 101 Ill. App. 2d 187, 196, 242 N.E.2d 324.) While it is true that physical defects of the driver of an automobile may, in some cases, be considered in determining the question of liability (*Bensman v. Reed* (1939), 299 Ill. App. 531, 20 N.E.2d 910), it is also true that courts may reject evidence which it feels is of little probative value because of its remoteness, uncertainty or conjective nature." (*Trippel v. Lott* (1974), 19 Ill. App. 3d 936, 944, 312 N.E.2d 369, 376.)

Even the authority cited by defendant is in accord. (*Klavine v. Hair* (1975), 29 Ill. App. 3d 483, 331 N.E.2d 355.) A reading of the offer of proof made by the defendant demonstrates that the trial court was not in error in excluding Mrs. Conklin's deposition statement. The offered testimony as to Ronald Conklin's driving ability was not based on first-hand knowledge and was obviously made in a jestful manner. Because there was no probative value to the evidence presented in the offer of proof, it was not error for the trial court to exclude that evidence. (*Trippel v. Lott.*) It should be remembered that matters of impeachment are within the sound discretion of the trial court. (*O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 364 N.E.2d 533.) Where, as here, the statement offered could confuse or mislead the jury, it is not an abuse of discretion for the trial court to exclude the statement from evidence.

Finally, defendant calls the court's attention to a recent Illinois Supreme Court decision, *Hunt v. Blasius* (1978), 74 Ill. 2d 203. In that decision the court held that where a contractor carried out a contract with the State of Illinois in strict conformity to specifications provided him in said contract, he was justified in relying upon the adequacy of the specifications unless those specifications were so obviously dangerous that no competent contractor would follow them. This decision provides no comfort for the defendant in the instant case. The testimony of Richard Nelson, defendant's general manager, is that Standard 2316, the State of Illinois directive referenced in the contract, requires that barricades be placed perpendicular to the driving lane. Thus, even if Standard 2316 were not so obviously dangerous that no competent contractor would follow it, it is uncontroverted by the testimony in the record that defendant did not follow the Standard.

After careful consideration of the record and oral and written arguments of counsel, and for the reasons above stated, the verdict of the circuit court of La Salle County is affirmed.

Affirmed.

ALLOY and STENGEL, JJ., concur.