JURATE SILVERMAN, Adm'r of the Estate of Liudvina Bigelis, Deceased, *et al.*, Plaintiffs-Appellants, *v.* GENERAL MOTORS CORPORATION, Defendant-Appellee.

First District (5th Division)    No. 80-1739

Opinion filed August 14, 1981.

Richard C. Moenning, of Chicago, for appellants.

Lord, Bissell & Brook, of Chicago (Thomas J. Burke, Jr., Richard E. Mueller, and Hugh C. Griffin, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Judgment was entered on a jury verdict in favor of defendant in an action to recover damages for wrongful death and personal injuries arising from a single car accident. On appeal, plaintiffs present questions as to whether the trial court erred in (1) directing a verdict for defendant on their *res ipsa loquitur* count; (2) ruling on certain defense expert testimony and exhibits; (3) allowing a defense expert witness to be present as defendant's representative at trial; and (4) giving certain jury instructions.

Plaintiff Vincent Bigelis (hereinafter Bigelis) testified that he and his deceased wife (hereafter decedent) purchased a new 1973 Pontiac Ventura automobile from Hoffman Pontiac[1] on May 31, 1973. On the morning of July 21, 1973, Bigelis and decedent left in the Ventura for a vacation in Canada. They traveled without difficulty via Interstate 94 about 85 miles to their farm in Michigan, where they stopped briefly. When they resumed, decedent was driving. The weather was good and the pavement dry as she entered Interstate 94 (which was three lanes in both directions) and proceeded east in the right-hand lane at a speed of 60-65 m.p.h. She had driven approximately 10 miles when the accident occurred, concerning which Bigelis could only recall that the car collided with the guardrail on the right side of the road and became airborn and that its hood appeared close in front of him.

Charles Aarup and Debra Kortum witnessed the occurrence. The former testified that he and Kortum were in a vehicle traveling east on Interstate 94 at 60-65 m.p.h.; that after passing a car, he looked into his side mirror and saw the Bigelis car approaching in the far left lane at approximately 80 m.p.h; that Bigelis' car passed the car which Aarup had just gone by, and the Bigelis car then veered sharply off the road to the right behind Aarup's vehicle—striking the guardrail and flying into the air. Kortum testified that she saw the Bigelis car swerve "as if it had made a complete right turn" and then go over the guardrail.

It further appears that after jumping the guardrail, the Bigelis car landed on its roof and tumbled down an embankment before righting itself and coming to rest more than 100 feet from the highway. As a result of the accident, the hood was torn off and most of the engine parts were damaged. In particular, the top half of the carburetor (including the fuel bowl) was sheared off by the impact and was found in the right corner of the engine compartment, where the battery is ordinarily located. The base of the carburetor (a cast iron assembly called the throttle body) was still bolted in place, although one mounting bolt was broken. The throttle

---

[1] Hoffman Pontiac, originally a named defendant, entered into a covenant not to sue with plaintiffs and the case was dismissed as to it prior to trial.

plates (two circular pieces of metal which govern the flow of the fuel mixture into the carburetor barrels) were undamaged.

At trial, plaintiffs' theory of the accident was that the throttle body extension (which contacts the tab on the throttle lever and is a component of the throttle body casting in the carburetor) was cracked and eventually broke off, causing the throttle mechanism to be jammed in the open position. In support of that theory, plaintiff presented the testimony of six expert witnesses.

William Rudd, a service station manager experienced in mechanics, testified that three weeks after the accident he examined the car and took photographs of the engine compartment, which showed the carburetor throttle plates to be in the horizontal or "closed throttle" position; that he subsequently removed all the carburetor parts and examined them in a laboratory; that the throttle bracket or lever (a metal piece connecting the throttle wire and the accelerator pedal to the throttle shaft) was completely bent over the end of the throttle body at the base of the carburetor by the impact; that when he bent the bracket back, he found broken fragments from the throttle body extension; that although he had no metallurgical expertise, it was his opinion that there had been a crack in the throttle body extension prior to the accident based on rust deposits he found on the broken fragments by examining them some 56 days after the accident, during which time the car had been outside; that nothing was wrong with the car's suspension, steering, or braking systems; that tire marks at the scene on the highway had been made by the right side tires accelerating and braking; and that black residue on the brake drum indicated braking prior to impact.

The evidence deposition of Allen Cheung, a chemist with a metal testing company, indicated that he made three chemical analyses on pieces of the throttle body to determine the percentage contents of various elements; that he obtained different results from those tests, but the differences were allowable under the procedures used for cast iron testing.

Darryl Albright, a metallurgist, testified that the throttle body met all hardness specifications; that the thickness of one wall of the throttle body extension was insufficient and reduced the strength of the casting; that the manganese, sulfur, and silicon contents of the broken fragments varied slightly from defendant's specifications, but he could not say with scientific certainty and in the absence of testing specific samples that an increase in the sulfur content alone would affect the strength of any throttle body casting; that on the basis of his tests, the casting in question met defendant's hardness specifications; that there was a prior crack in the throttle body extension; that while he thought the throttle was open (despite the absence of physical or metallurgical evidence to that effect)

at the time of the accident, he could not explain why the throttle plates were undamaged since, if the throttle had been open, the throttle plates would have been in a vertical position sticking up into the fuel bowl assembly—which was sheared off by the impact; that it would have been helpful to the formation of his opinion to have seen the undamaged throttle plates and the bent throttle bracket; and that even if there had been a crack in the throttle body extension, it would not have affected the normal operation of the carburetor.

Jack Campau, a consulting engineer, testified that in his opinion a piece of the throttle body extension had broken off and lodged under the throttle lever, thereby jamming open the throttle shaft and throttle plates and causing the driver to lose control while applying the brakes; that although the brakes on the Bigelis auto were fully functional, they would be unable to stop a car with the throttle open; that in his examination, he determined that decedent had applied the brakes at the time of the accident, although in his discovery deposition he testified that he had seen no physical evidence of an application of brakes; and that decedent had taken "improper action" to correct the problem caused by the purported jamming of the throttle mechanism.

Thad Aycock, an accident reconstruction expert, testified that photographs of tire marks at the scene showed they had been made by left side tires; that he found no evidence of wheel lock to indicate that the brakes had been applied; and that the driver's steering of the car was the cause of the right turn and its catapulting over the guardrail as it did.

Stanley Sedivy, a mechanical engineer employed by a consulting engineer firm, testified that the throttle plates could not have been in a completely open position at the time of the accident; that they could have been open 35 to 40 degrees due to the action of the driver and thereby avoided damage on impact; that he found no evidence to indicate that the throttle plates were jammed open prior to the accident; and that the impact caused the crack in the throttle body casting.

Defendant presented the testimony of five experts. Ray Schultz and Cletus Becker, engineers in its employ, testified that they tested the throttle body casting for hardness and chemical content and found that it met defendant's specifications except for negligible variations in the manganese and sulfur contents that would not have significantly affected its strength.

Edward Holmes, a safety engineer with an independent consulting firm, testified for defendant that none of the thickness measurements or chemical analyses in evidence affected the strength of the throttle body casting; that the direction of the bend in the throttle shaft and the undamaged condition of the throttle plates indicated that the plates were closed at the time of impact; that if the plates had been open, they would

have been damaged when the carburetor assembly was sheared off; and that his tests indicated that rust would develop on any broken piece of throttle body casting exposed to the elements for 56 days.

Michael Holcomb, a staff analysis engineer for defendant, testified that on the basis of the car's tires and the tire marks on the highway, the brakes had not been applied; that the tire marks were from the left side tires and attributable to hard cornering and turning the steering wheel to the right; and that the sharp right turn was due to the driver's actions.

Finally, Arthur Van Steelandt, also a staff analysis engineer for defendant, testified that he knew of no force that could have broken the extension on the throttle body casting prior to impact with the guardrail; that the black residue marks on the inside of the brake drum were from storage, not from braking; that the thickness of the extension of the throttle body casting met defendant's specifications; that based on his examination of the vehicle and other evidence, he concluded that the throttle plates were closed at the time of the impact; and that a dent on the inside of the throttle lever showed that the fragments found after the accident (and since lost) were broken off by a corner of the throttle stop as the lever was bent at impact and were undamaged at the time of the accident and thus could not have prevented the throttle plates from closing prior thereto.

At the close of plaintiffs' case, a directed verdict for defendant was granted as to the counts asserting a design defect, failure to warn, wilful and wanton misconduct, and *res ipsa loquitur*. At the close of all the evidence, a directed verdict was granted defendant as to a count alleging breach of express warranty but denied as to counts sounding in strict liability, negligence, implied warranty, and based on the family expense statute. However, the jury was instructed only as to strict liability and negligence and returned a verdict in favor of defendant on both counts.

OPINION

Plaintiffs' principal contention is that a verdict was improperly directed as to the *res ipsa loquitur* count because the evidence warranted the inference of negligence on the part of defendant. Defendant maintains, on the other hand, that none of the criteria giving rise to such inference was satisfied.

The essense of the doctrine of *res ipsa loquitur* was stated in *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 448-49, 207 N.E.2d 305, 307:

> "When a thing which caused the injury is shown to be under the control or management of the party charged with negligence and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the

accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care."

The element of exclusive control "doesn't mean actual physical control at the time of the accident, if the instrumentality or dangerous agency is one which it is defendant's responsibility to maintain at all times \* \* \*." (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 450, 207 N.E.2d 305, 307.) Furthermore, plaintiff must exercise due care for his own safety so that it may not be said the injury was due to any action on his part (*Cox v. Yellow Cab Co.* (1973), 16 Ill. App. 3d 665, 306 N.E.2d 738, aff'd (1975), 61 Ill. 2d 416, 337 N.E.2d 15), and it follows that the doctrine does not apply if the injury can be as readily attributed to pure accident as to negligence (*Hunter v. Alfina* (1969), 112 Ill. App. 2d 432, 251 N.E.2d 303). Thus, the purpose of *res ipsa loquitur* is to create a factual inference of general negligence from otherwise inexplicable facts (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 402 N.E.2d 216; *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 247 N.E.2d 877) by allowing proof of negligence through circumstantial evidence when the direct evidence of the cause of the injury is primarily within defendant's knowledge and control (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259; *Metz v. Central Illinois Electric & Gas Co.*). Whether the doctrine applies in a particular case is a question of law. *Spidle v. Steward.*

In the present case, it appears that during the 51 days following plaintiffs' purchase of the auto, at least three people had worked on the engine compartment at different times. Bigelis testified that he tightened a nut on a pulley for the power steering in July 1973 and that Hoffman Pontiac serviced the car on July 20, 1973—the day before the accident. Louis Snyder, a gasoline station operator, testified that he adjusted the fast idle lever for a person he believed to be decedent on July 4, 1973.

In addition, we note that many of the findings and conclusions of plaintiffs' experts conflicted with one another and with the physical evidence. Darryl Albright testified that the throttle plates were in the open position but could not explain the absence of damage to them. William Rudd testified that the plates were completely closed. Stanley Sedivy testified that the plates could not have been completely open without being damaged and found no evidence of the plates being jammed open prior to impact. Albright and Rudd further testified that there had been a preexisting crack in the throttle body extension as shown by rust deposits on the broken fragments. Sedivy testified, however, that the crack resulted from the impact, and Albright admitted that such a crack would not have caused the carburetor to malfunction in the manner

alleged. Rudd also testified that tire marks at the scene were from right side tires, but Thad Aycock testified that the marks were from left side tires. Furthermore, Jack Campau testified that driver error contributed to the accident, as decedent had taken improper action to correct the problem purportedly caused by the jammed throttle mechanism, and Aycock testified that decedent's steering of the car caused it to leave the highway. Finally, Aycock testified that there was no evidence of the brakes having been applied; but Rudd testified that the brakes had been applied, based on black residue found on the brake drum.

■■ The factual disarray presented herein compels us to agree with defendant that the doctrine of *res ipsa loquitur* is inapplicable. The record does not indicate, nor did the jury so find, that more probably than not the cracked throttle body casting was the agency that caused the accident. (*Cf., e.g., Moore v. Jewel Tea Co.* (1969), 116 Ill. App. 2d 109, 253 N.E.2d 636, *aff'd* (1970), 46 Ill. 2d 288, 263 N.E.2d 103 (accident caused by condition of contents within defendant's unopened can of Drano); *Metz v. Central Illinois Electric & Gas Co.* (accident caused by explosion of defendant's gas main); *Martino v. Barra* (1973), 10 Ill. App. 3d 97, 293 N.E.2d 745 (accident caused by detachment of truck wheel which had been repaired and replaced by defendant); *May v. Columbian Rope Co.* (1963), 40 Ill. App. 2d 264, 189 N.E.2d 394 (accident caused by defendant's broken rope).) Neither does the record indicate the right or opportunity by defendant to exercise control over the auto, as it had been in Bigelis' hands for 51 days prior to the accident, driven over 2,000 miles, and given some servicing by at least three people. Furthermore, from the testimony of Aarup, Campau and Aycock, it appears that decedent may not have been properly attentive in the operation of the vehicle, and thus plaintiffs fail to eliminate the possibility that decedent was responsible to some extent for the accident.

■■ We are thus left with the mere occurrence of the accident, which, standing alone, cannot support an inference of negligence. (*Publication Corp. v. Chicago River & Indiana R.R. Co.* (1977), 49 Ill. App. 3d 508, 364 N.E.2d 523; *Gray v. Schottmiller* (1974), 18 Ill. App. 3d 812, 310 N.E.2d 750.) That general rule has been applied to the situation in which an automobile inexplicably leaves the highway (*Rotche v. Buick Motor Co.* (1934), 358 Ill. 507, 193 N.E. 529), and it has been held that where plaintiff's 1-month-old car caught fire after being driven 1,300 miles, such occurrence did not authorize the inference that defendant was responsible (*Haas v. Buick Motor Division* (1959), 20 Ill. App. 2d 448, 156 N.E.2d 263). Similarly, in the present case, the fact that the Bigelis car veered off the highway does not, of itself, authorize the inference of defendant's negligence. We note, in addition, that in view of the uncontradicted testimony of defendant's experts, juxtaposed to that of plaintiffs', the accident

more probably than not was caused by an instrumentality over which defendant had no control. Accordingly, we conclude that the trial court did not err in directing a verdict for defendant on plaintiff's *res ipsa loquitur* count.

■■ Plaintiffs next contend that certain rulings by the trial court were prejudicially erroneous. First, they assert error in the admission of defendant's photographs showing tests on throttle body castings conducted by Edward Holmes, who testified that the tests were conducted in accordance with standard engineering practices and that the parts tested were substantially similar to those on the Bigelis vehicle. Plaintiffs appear to contend, however, that evidence of those tests was inadmissible, as thickness measurements and chemical analyses were not taken from the test samples, despite Holmes' testimony that such facts could not have been ascertained without destroying the samples. The tests showed the types of cracks likely to form with the throttle plates in the open and closed positions; that with the plates closed, the fracture path developed in the same manner as it did in the accident, and with the plates open, the path developed differently. The record further indicates that the force applied by the machine on which the tests were conducted was in the same direction in relation to the throttle body casting as in the accident. We note, in addition, that Darryl Albright confirmed the appropriateness of the test Holmes used and that Holmes testified that the thickness had no bearing on the strength of the material in the stressed area or on the propogation of the crack.

Plaintiffs also objected to the admission of a film of a brake test in which, as Michael Holcomb testified, the same model car equipped in substantially the same manner as the Bigelis auto was used under substantially similar conditions. The tests showed that with the throttle locked in the open position and the car traveling at approximately 80 m.p.h., the application of the brakes resulted in bringing the test car to a straightline, controlled stop; and that, under such circumstances, heavy flat marks were left on the front tires.

In our view, the admissibility of evidence concerning both the throttle body casting and the brake tests is governed by the general rule stated in *Schofield v. Crandall, Inc.* (1974), 24 Ill. App. 3d 101, 104, 319 N.E.2d 585, 587:

> "Where the circumstances are essentially the same, such experiments are allowable as evidence and it is generally taken to be within the discretion of the trial judge as to whether or not such experiments so nearly approximate the original conditions as to be admissible.
>
>          *   *   *
>
> * * * [E]vidence of experiments made out of court is admis-

sible if conditions of the experiment are believed by the trial court to be substantially similar even though not identical to the actual circumstances of the case. Identical conditions can rarely if ever be achieved, and it is therefore necessary to allow some latitude to the trial court in determining whether the conditions of the experiment are sufficiently similar to the facts of the actual occurrence to have probative value." (Also see *Hubbard v. McDonough Power Equipment, Inc.* (1980), 83 Ill. App. 3d 272, 404 N.E.2d 311; *Terrell v. Lovelace* (1978), 65 Ill. App. 3d 332, 382 N.E.2d 135.)

We think that the conditions of the challenged experiments were sufficiently close to the facts and circumstances of the accident in question so as to come within the court's discretion to admit. Moreover, that evidence tended to be cumulative to other evidence, including some by plaintiffs' experts, and tended to support defendant's position that the brakes had not been applied and that the throttle plates were closed at the time of impact. Accordingly, the trial court did not abuse its discretion in ruling the evidence of the experiments to be admissible.

■■ Plaintiffs further argue that the trial court improperly excluded a provision of the Federal Register (34 Fed. Reg. 15,420 (1969)) and related documents pertaining to throttle control requirements. They maintain this evidence was relevant to their allegations that defendant had knowledge of but did not warn purchasers that the failure of the accelerator control systems can produce a dangerous condition. We believe, however, that such a conclusion requires neither proof nor argumentation and would be apparent to the reasonable mind. Thus, it appears that plaintiffs suffered no prejudice by the absence of proof of something evident to the jury. Moreover, the record does not disclose how, if at all, defendant violated any provision of the regulation. Rulings on the admission of evidence are largely discretionary with the trial court and should not be reversed absent abuse of discretion (*Conklin v. Strunk Brothers Asphalt Co.* (1979), 70 Ill. App. 3d 956, 388 N.E.2d 1136), and we find no such abuse in the instant case. We have also considered plaintiffs' other contentions of error concerning the admission of certain evidence and find them to be without merit.

■■ The third assertion of error centers on the fact that Arthur Van Steelandt, who was designated as defendant's representative at trial, was also allowed to testify as its expert. It has been held that a party to an action who is also a witness is entitled to be present in the courtroom (*North Shore Marine, Inc. v. Engel* (1980), 81 Ill. App. 3d 530, 401 N.E.2d 269) and that a defendant has the right to be present at the trial of his case, whether civil or criminal (*Hubbard v. Hubbard* (1980), 84 Ill. App. 3d 761, 405 N.E.2d 1362; *Village of Elmwood Park v. Keegan* (1975), 26 Ill. App. 3d 925, 326 N.E.2d 92). It is also a familiar principle that corpo-

rations can act and testify only through their officers (*People ex rel. Metropolitan Casualty Insurance Co. v. Calumet National Bank* (1931), 260 Ill. App. 603), and that the details of conduct of corporate business may be delegated to subordinates short of divesting the officers of the duty of general supervision and control of the corporation (*Steigerwald v. A. M. Steigerwald Co.* (1955), 9 Ill. App. 2d 31, 132 N.E.2d 373; *Lowell Hoit & Co. v. Detig* (1943), 320 Ill. App. 179, 50 N.E.2d 602). We think it clear that the task of acting on behalf of the corporate entity was properly delegated to Van Steelandt and, as his interest in the outcome of the trial was apparent to the jury, we see no prejudice to plaintiffs by his presence.

The final contention raised on appeal by plaintiffs is stated as follows: "The trial court's rulings on instructions to the jury were erroneous so that the jury was improperly instructed." Plantiffs correctly state that they had the right to have the jury clearly and fairly instructed on each theory supported by the evidence. (*Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 357 N.E.2d 500.) However, if a party does not tender an instruction, the trial court's failure to give it cannot be claimed as error on appeal. Ill. Rev. Stat. 1979, ch. 110A, par. 366(b)(2)(i); *GNP Commodities, Inc. v. Walsh Heffernan Co.* (1981), 95 Ill. App. 3d 966.

Initially, we note that plaintiffs' argument concerning this contention is unclear in that they refer to most of the instructions complained of by substantive matter. They state that:

"[T]he jury was never instructed on the *Res Ipsa Loquitur* theory of general negligence and, instructions pertaining to willful and wanton misconduct and express warranty and implied warranty were never approved. Neither, was the jury instructied [*sic*] as to Defendant's duty to warn and duty to design product liability defects [*sic*]."

The record, however, discloses that no instructions were tendered as to *res ipsa loquitur*, wilful and wanton misconduct, the duty to properly design, or the duty to warn of the alleged defective condition.[2] Furthermore, instructions on those theories should not have been given, as verdicts had been directed for defendants as to each of them. We have found above that *res ipsa loquitur* was properly taken from the jury and, although plaintiffs have presented no issue on appeal as to the propriety of the other directed verdicts, we have examined the record and are of the belief that they were also properly directed.

■■ Plaintiffs also argue that instructions on the issues of express and implied warranty should have been given. Again, we note that no instruction was tendered on express warranty and that a verdict had been properly directed on that theory. As to implied warranty, the record

---

[2] Instructions were submitted as to wilful and wanton misconduct and the alleged duty to warn, but were subsequently withdrawn.

shows that plaintiffs' tendered instruction No. 34, purporting to state the issues as to implied warranty, was refused. Plaintiffs, however, make no argument in their briefs to support their statement that this instruction should have been given. In the absence of supporting argument or citation of authority, plaintiffs have waived error, if any, in the refusal of this instruction. (2 Ill. L. & Prac. *Appeal and Error* §556 (1953); *Village of Roxana v. Costanzo* (1968), 41 Ill. 2d 423, 243 N.E.2d 242.) Furthermore, we believe that the instruction was properly refused in the form tendered, as it did not include any reference to the necessary element of notice, as required by section 2—607(3)(a) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 2—607(3)(a); also see *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550; *Goldstein v. G. D. Searle & Co.* (1978), 62 Ill. App. 3d 344, 378 N.E.2d 1083), and because it contained certain language which required defining through other instructions which were not tendered.

Plaintiffs further assert that the strict liability aspect of defendant's issue instruction No. 12 was so framed as to mislead the jury into the belief that unless broken fragments from the carburetor were lodged in the throttle linkage when the automobile was manufactured, defendants would not be liable. That instruction reads in relevant part as to count I:

> "The plaintiff claims that he was injured while using the automobile and that there existed in the automobile at the time it left the control of the defendant a condition which made the automobile unreasonably dangerous, preventing its deceleration because the throttle shaft housing extension was so cast and machined to a critical weakness in the driving end of the throttle shaft housing that fragments lodged within the throttle linkage, preventing the normal return of the throttle to its closed position."

It is our view, however, that plaintiffs' reading of this instruction is not compelled by its language, as we consider that it only requires a finding that the fragments in question became lodged in the throttle mechanism at any time between the date of manufacture and the occurrence of the accident because of a condition existing at the time the automobile left the control of the defendant. Although it is improper for a court to instruct the jury in a confusing or misleading manner (*Van C. Argiris Co. v. Caine Steel Co.* (1974), 20 Ill. App. 3d 315, 314 N.E.2d 361), we believe that a common sense interpretation of the challenged instruction would not be misleading or confusing, and that the jury was fairly and comprehensibly informed on that issue (see *Woodward v. Mettille* (1980), 81 Ill. App. 3d 168, 400 N.E.2d 934).

■■ Plaintiffs also maintain that decedent's contributory negligence was improperly included as an issue in the instructions. We disagree. It appears to us that the jury was instructed as to contributory negligence of

decedent because plaintiffs chose to present the issue of negligence to the jury. The jury was specifically instructed that the issue pertained to the negligence count, and the burden of proof instruction informed the jury that it applied only to the claim on behalf of decedent. Moreover, there was evidence, including some from plaintiffs' experts, indicating that decedent had taken improper action in the operation of the automobile. Such evidence supports the giving of the instruction. See *GNP Commodities, Inc. v. Walsh Heffernan Co.*; *Hagopian v. First Venture, Ltd.* (1980), 90 Ill. App. 3d 951, 414 N.E.2d 85.

■■ Plaintiffs additionally urge that their instructions Nos. 7, 20, 32, and 33 were improperly refused; that defendants' instruction No. 16 was erroneously given; and that they were improperly required by the court to delete certain language from their instruction No. 25 as originally tendered. We disagree. We find no error with respect to the refusal of No. 7, stating defendant's duty to exercise due care as to plaintiffs, because this duty was properly set forth in defendant's instruction No. 5 which was given, and the record discloses that Nos. 20, 32, and 33 were not refused by the court but were withdrawn by plaintiffs. We do not consider plaintiffs' contention with respect to defendant's instruction No. 16 as to the burden of proof, because the record discloses that plaintiffs specifically stated they did not object to it at the conference on instructions. (See *Lawson v. Belt Ry. Co.* (1975), 34 Ill. App. 3d 7, 339 N.E.2d 381; *Lewis v. Hull House Association* (1975), 25 Ill. App. 3d 617, 323 N.E.2d 600.) Concerning plaintiffs' instruction No. 25, they argue that they submitted it in the form given only after the court required the deletion of certain language in the instruction as originally tendered. We are not able to evaluate this argument, however, as the record does not include the instruction as originally tendered, and the alleged deleted language does not otherwise appear in the record.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.