**Pamela S. HARRIS, Plaintiff–Appellant,**

v.

**GENERAL MOTORS CORPORATION, Defendant–Appellee.**

No. 01–3073.

United States Court of Appeals, Seventh Circuit.

Argued April 3, 2002.

Decided April 17, 2002.

Rehearing Denied June 20, 2002.

Before COFFEY, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

## ORDER

Pamela Harris sued General Motors Corporation, the manufacturer of her 1996 Chevrolet Cavalier, claiming that the driver's side airbag in her car did not deploy properly after a minor collision. Her suit began in state court, but GM removed it to federal court based on diversity jurisdiction. The district court quickly eliminated her claim based on the *res ipsa loquitur* doctrine, and the remainder of the case was prepared for trial. At the last minute, however, the district court invited a second summary judgment motion from GM and in short order dismissed Harris's other three claims, which were based on strict liability, negligence, and breach of warranty. Harris appeals, insisting that there were genuine issues of fact that deserved a full trial. Although we understand that she was injured when the airbag deployed, the record compels us to agree with the district court that Harris cannot prevail. We therefore affirm.

The facts taken in the light most favorable to Harris reveal the following story. The accident took place on May 20, 1997. Harris was driving at approximately 20 miles per hour, with her seatbelt on, when a 1990 Geo Prism pulled in front of her. She hit the brakes of her car, but was unable to stop in time, and the two cars collided. At that point, Harris was still alert. She was annoyed that her new car (which she had owned since February 8, 1996) had been damaged. She was also struck by the fact that the passenger side airbag had deployed when the collision occurred, but the driver's side airbag had not. Harris unfastened her seatbelt and leaned forward, reaching toward the driver's side door and possibly turning slightly toward it. At that point, some 20 seconds after the impact, the driver's side airbag suddenly deployed. Harris remembered seeing a flash, but the force of the airbag striking her rendered her unconscious. She suffered a number of injuries from the impact of the airbag, including bruises to the right side of her face, neck, shoulder, arm, and rib cage, and most seriously, the bones in her neck were displaced. Later, she had a "cervical fusion" operation in which bone from her hip was grafted into her neck.

Harris's account of the late deployment of the airbag was corroborated by an eyewitness to the accident, John Marshall. He observed the entire crash and was prepared to testify that immediately after the collision, the passenger side airbag had deployed and the driver's side airbag had not. Marshall thought this was odd. He then heard what he described as a loud pop, "like a big bang," and the next thing he knew, the driver's side airbag was inflated. (At oral argument, counsel for Harris noted that airbags deploy at a speed of about 200 miles per hour, and so it is not possible for the unaided human eye actually to watch the inflation process:

one minute the airbag is hidden, and the next it is fully inflated and possibly starting to deflate.)

Harris was then taken to the hospital, and her car was eventually towed to Foley–Sweitzer motors, a local GM dealer. Foley–Sweitzer replaced the entire airbag system within a few days and discarded all of the damaged or original components. A month or so later, once she was out of the hospital, Harris consulted a lawyer about the incident, and the lawyer immediately contacted Foley–Sweitzer to see if he could obtain the damaged parts. Unfortunately, they were no longer either in Foley–Sweitzer's possession or otherwise traceable. Harris filed her lawsuit on May 19, 1999, asserting the four theories mentioned above: (1) strict liability, (2) negligence, (3) breach of warranty, and (4) *res ipsa loquitur.*

In addition to her own testimony and that of Marshall, Harris offered two additional types of evidence in opposition to GM's motions for summary judgment. First, she proffered her treating physician (a neurologist), Dr. Edward Eyerman, as a witness who could testify that her injuries were caused by the late deployment of the driver's side airbag. The district court was willing to allow Dr. Eyerman to testify that Harris's injuries were consistent with injuries resulting from contact with an airbag, but it refused to allow him to render an opinion on the question of the timing of the airbag's activation. Second, Harris proffered extensive materials GM had produced, which fell into two categories. First was a list of owner complaints and 1,241 reports involving allegations that the driver's side airbag in car models like the Cavalier (the J-cars) had deployed after a collision; second was a document entitled "Recall Campaign Bulletin No. 98026—Inadvertent Airbag Deployment," with related correspondence and investigative documents. The district court also excluded all the GM material. With respect to the owner complaints and reports, it concluded that Harris had failed to show that the other incidents were substantially similar to her collision. The Recall Campaign, it decided, had been about airbags that deployed in either a "no-crash" or a "low-speed crash" situation, not a late deployment of an airbag in a car that had experienced a collision that was hard enough to warrant deployment of the front airbags (as everyone agreed Harris's was). Left with only the evidence that the airbag did not deploy until 15–20 seconds after the collision and the evidence of Harris's injuries, the district court ruled for GM on its renewed summary judgment motion.

■ We agree that this result was the only one that could be reached on this record. In order to state a claim under a theory of strict liability, Harris had to prove that her injury resulted from the condition of the airbag system in the Cavalier, that it was unreasonably dangerous, and that the condition existed when the car left GM's control. See, *e.g., Suvada v. White Motor Co.,* 32 Ill.2d 612, 210 N.E.2d 182 (1965). It is her burden to show that the critical defect is GM's fault. *Mullen v. General Motors Corp.,* 32 Ill.App.3d 122, 336 N.E.2d 338, 344 (1975). To state a claim under a negligence theory, Harris had to prove that GM owed her a duty, that it breached that duty, and that her injuries are a proximate cause of the breach. *Lindenmier v. City of Rockford,* 156 Ill.App.3d 76, 108 Ill.Dec. 624, 508 N.E.2d 1201, 1207 (1987).

Importantly, proof of causation and proof that GM's product was defective is essential to both these theories of liability. Without resorting to the *res ipsa loquitur* notion, which we discuss below, Harris's evidence is inadequate on both these points. It is no longer possible for anyone to have access to the airbag and its deployment mechanism, because they were de-

490

stroyed years ago (and it does not matter for present purposes who was responsible for that action). Harris did not proffer any expert witness who was competent to testify about any possible defect. Even if she had appealed from the district court's decision to bar the evidence from GM's recall and we had agreed that it should have been admitted, she would have needed someone to draw the connection between the type of defects identified in the study and the problem in her own case. Finally, she had no evidence that the injuries she suffered were any different from those she would have received if the airbag had deployed at the instant of collision. Dr. Eyerman said only that her injuries were consistent with those that an airbag would inflict.

■ Harris would like to overcome these problems using *res ipsa loquitur*, but there she runs into the problem that Illinois law, which governs her case, does not recognize this theory in product liability cases where the product has been out of the manufacturer's control for a significant amount of time. See *Mateika v. LaSalle Thermogas Co.*, 94 Ill.App.3d 506, 49 Ill. Dec. 649, 418 N.E.2d 503 (1981); *Silverman v. General Motors Corp.*, 99 Ill. App.3d 593, 54 Ill.Dec. 882, 425 N.E.2d 1099 (1981). In any event, Illinois law required her to show that her accident was one that ordinarily does not occur in the absence of negligence and that the defendant had exclusive control over the instrumentality that caused the injury. *Dyback v. Weber*, 114 Ill.2d 232, 102 Ill.Dec. 386, 500 N.E.2d 8, 12 (1986). Even if we assumed that she could show the first of these elements, she cannot satisfy the second. The district court was correct to grant summary judgment for GM on the *res ipsa* theory.

■ Finally, Harris asserted that GM was liable for breach of express warranty, breach of the implied warranty of mer-

chantability, and breach of the implied warranty of fitness for a particular purpose. While we give Harris the benefit of the doubt and assume that she argued that the Cavalier did not operate properly, and that its performance in a collision was not what it should have been (and, sadly enough, collisions are part of the ordinary use of cars), she runs into the same problems on her three warranty theories that she did with her tort theories. She has not provided concrete evidence that the airbag system in her particular vehicle was defective, nor, even if we assumed that all late deployments are defective, has she shown that the late deployment caused her injuries. *Van Winkle v. Firestone Tire & Rubber Co.*, 117 Ill.App.2d 324, 253 N.E.2d 588, 590 (1969).

On the present record, therefore, GM was entitled to summary judgment on all four theories. We therefore AFFIRM the judgment of the district court.